WESTERN UNION TEL. CO. v. MORRIS.

(Circuit Court of Appeals, Eighth Circuit. December 13, 1897.)

No. 921.

1. NEGLIGENCE OF TELEGRAPH COMPANY — PROXIMATE CAUSE—QUESTION FOR JURY.

Where the testimony of a physician tends to show that a surgical operation might have been avoided, had he reached the patient earlier, it is not error to submit to the jury the question as to whether or not the failure of a telegraph company to properly transmit a message, whereby the physician was prevented from earlier attendance, was the proximate cause of the injuries resulting from such operation.

2. DAMAGES—EVIDENCE—INSTRUCTIONS.

It is error to instruct a jury, in determining the damage to a person resulting from a surgical operation, to consider the probability of permanent impairment of health, and the lessening of ability to perform physical labor, when there is no evidence that the operation tended to produce such results, and the injuries are not, of themselves, of such a nature as to warrant such an inference.

In Error to the Circuit Court of the United States for the District of Kansas.

This suit was brought by Daisy E. Morris, the defendant in error, against the Western Union Telegraph Company, the plaintiff in error, to recover damages for an error committed, through the alleged negligence of the defendant company, in transmitting a telegram which was intrusted to it for transmission. The facts, as developed by the evidence, were, in substance, as follows: On December 4, 1895, the plaintiff resided with her husband on a farm about two miles from the village of Hoyt, Jackson county, Kan., where the defendant company maintained a telegraph station communicating with its station in the city of Topeka, Kan. On that day she was afflicted with severe pains, which were subsequently attributed by the physician who attended

her to an inflammation of the peritoneum, called "peritonitis"; and about 5 or 6 o'clock p. m. she caused a telegram to be delivered to the defendant company, at its station in the town of Hoyt, to be transmitted to a doctor who resided in Topeka, by the name of Dr. Dawson. The telegram, as delivered to the defendant's operator, read as follows: "Hoyt, Ks., Dec. 4. Dr. Dosen: Come on the morning train, and not fail. Ans. I will meet you. Frank Morris, Hoyt, Kas." By an error committed in transmitting the message, when it was delivered to the doctor, at about half past 8 or 9 o'clock p. m., it read as follows: "Come on the morning train, and not answer. Fronk." A man by the name of Fronk, who was known to Dr. Dawson, for whom the telegram was intended, lived near Hoyt; but as the doctor was not well acquainted with him, and as there were two or three persons by the name of Fronk who lived in the vicinity of Hoyt, he decided not to answer the call. If he had known that the message came from Mrs. Morris or her husband, he would have gone to Hoyt by the first train which left Topeka on the morning of December 5, 1895, at 6:30 a. m., and would have reached his patient about 8 a. m. of that day; but, by reason of the mistake aforesaid, he did not leave Topeka until he had received a second message, which was sent by the plaintiff on the morning of December 5, 1895, and did not reach her bedside until about 5 p. m. of that day. He remained with her on that occasion a few hours, and succeeded in relieving her of acute pain, and reducing her fever to some extent. He did not visit her again until December 7, 1895, at which time she had so far recovered that further visits were deemed unnecessary. On December 29, 1895, in consequence of her health not having been fully restored, the plaintiff went to a hospital at Topeka, Kan., and had a surgical operation performed, which consisted in removing her ovaries and Fallopian tubes, by which means her health was eventually restored. The jury rendered a verdict against the defendant company in the sum of $4,500, and a judgment was entered thereon, to reverse which the case has been brought to this court by writ of error.

W. H. Rossington (Charles Blood Smith, Clifford Histed, and George H. Fearons, on the brief), for plaintiff in error.

S. B. Isenhart, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and RINER, District Judge.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is first assigned for error that there was no evidence tending to show that the surgical operation which the plaintiff underwent on December 29, 1895, was the proximate result of the mistake made by the defendant company in transmitting the telegram to Dr. Dawson on December 4, 1895, and that the trial court should have instructed the jury to that effect, as it was requested to do. With reference to this contention, it is sufficient to say that while the relation of cause and effect between the two acts last aforesaid seems remote, and while the evidence to establish that the one act was the efficient cause of the other is far from being clear and satisfactory, yet we are not able to say that there was no evidence warranting the submission of that issue to the jury. A careful examination of the testimony of Dr. Dawson, one of the medical experts, shows, we think, that in the course of his examination he did express the opinion, in substance, that if he had not been misled by the telegram of December 4, 1895, and had arrived and prescribed for the plaintiff on the morning of December 5, 1895, instead of the evening of that day, he could have administered remedies which, in

83 F.—63

his judgment, would have prevented any suppuration from the affected parts or membranes, and thereby have rendered the subsequent surgical operation unnecessary. This testimony was admitted without objection,—in fact, the opinion of the witness to the effect last stated was elicited on cross-examination; and the jury, rather than the court, were entitled to say what weight should be accorded to it. We think, therefore, that the trial court did not commit a reversible error in leaving the jury to determine whether the defendant's failure to transmit the message properly was the proximate cause of the plaintiff's being subsequently compelled to undergo the surgical operation in question.

It is further assigned for error, however, that the trial court erroneously instructed the jury that, in case they found for the plaintiff below, then it would be their duty, in assessing her damages, to consider the probability of a permanent impairment of the plaintiff's health as a result of the surgical operation, and her ability to perform physical labor thereafter; also, the expense which she had incurred, if any, as the result of the delay in transmitting the message. It is claimed on the part of the defendant that there was no evidence tending to show that the surgical operation permanently impaired the plaintiff's health, or lessened her ability to perform physical labor, or that the mistake made in transmitting the message of December 4th occasioned the plaintiff any expense. The record supports the contention that the jury were instructed to the effect above stated, but there seems to be no testimony in the record which has a tendency to show that the surgical operation did permanently impair the plaintiff's health, or that it affected her capacity to work in the usual way. On the contrary, the evidence has a strong tendency to prove that the removal, by the operation, of certain sexual organs, which had become permanently diseased, had the effect of restoring the plaintiff's health, which could have been restored in no other way. It cannot be said in justification of this part of the charge that the reference made to an impairment of the plaintiff's health, and to a loss of her ability to work, meant no more than that an allowance ought to be made for the loss of the organs which had been removed, because in the same connection the court also instructed the jury that they should assess damages for the loss of said organs, and also for the pain and suffering which the plaintiff had endured as a result of the removal thereof. It is obvious, therefore, that the charge authorized the jury, in addition to the damages last aforesaid, to assess other and additional damages for impaired health, and for a supposed loss of ability to labor. We find no evidence on which to base that part of the charge, and it may have influenced the jury in making up their verdict. It is a well-established rule, in cases of this character, that where damages are claimed for loss of time incident to an injury, or for expenses incurred for medicine and medical treatment, or for a permanent impairment of health, or loss of capacity to labor, there must be some evidence before the jury tending to show damages of such a character; otherwise an instruction which authorizes a jury to assess such damages is misleading and erroneous, and sufficient cause for

a reversal of the judgment, unless it clearly appears that such instruction has in fact done no harm. Railroad Co. v. Patillo (Ga.) 24 S. E. 958; Mammerberg v. Railway Co., 62 Mo. App. 563; Railway Co. v. Artusey (Tex. Civ. App.) 31 S. W. 319; Telegraph Co. v. Drake (Tex. Civ. App.) 29 S. W. 919; Railway Co. v. Rossing (Tex. Civ. App.) 26 S. W. 243; Watts v. Railroad Co. (W. Va.) 19 S. E. 521; Comaskey v. Railroad Co. (N. D.) 55 N. W. 732; Campbell v. Alston (Tex. Civ. App.) 23 S. W. 33; Culberson v. Railway Co., 50 Mo. App. 556; Cousins v. Railway Co., 96 Mich. 386, 56 N. W. 14. In some cases injuries are sustained which are of such a nature as will, in themselves, warrant an inference that they will permanently affect the injured person's health, or lessen his or her capacity to labor; but in the present case we cannot say that the injuries inflicted by the surgical operation were of such a character that the jury were at liberty to infer therefrom that the health of the plaintiff would be permanently affected, or that her capacity to labor would be thereby impaired. It is just as reasonable to suppose, in the absence of any evidence on the subject, that she sustained no loss in either of these respects. The result is that the instruction last referred to was erroneous, and, as it may have had the effect of increasing the damages, the judgment of the circuit court must be reversed, and the cause remanded for a new trial. It is so ordered.