(January 31, 1908.)

## JACOB E. TARR, Respondent, v. OREGON SHORT LINE R. R. CO., Appellant.

[93 Pac. 957.]

ACTION FOR TORT—EJECTION FROM RAILWAY TRAIN—PASSENGER RIGHT-
FULLY ON TRAIN—REFUSAL OF RAILROAD COMPANY TO FURNISH
PASSENGER BAGGAGE CHECK—LIABILITY OF COMPANY FOR FAILURE
TO FURNISH CHECK—ALLOWANCE OF DAMAGES FOR PHYSICAL PAIN,
MENTAL SUFFERING AND HUMILIATION—SPECIAL DAMAGES FOR LOSS
OF TIME—INSTRUCTIONS TO JURY.

1. Under the provisions of sec. 2674, Rev. Stat., a railroad cor-
poration doing business in this state is required to affix a check to
every parcel of baggage received by it, and to deliver a duplicate
thereof to the passenger or person delivering the same, and if such
check is refused on demand therefor, the railroad company is liable
in the sum of $20 to such person and, in addition thereto, cannot
collect any fare or toll from such passenger.

2. Where a railroad company has no night agent at a station
to receive and check baggage, but stops its train at such station
and takes on a passenger and his baggage, and after the passenger
boards the train and demands a check for his baggage, and de-
clines to pay his fare or deliver up his ticket until he receives
such check, and the employees of the company in charge of the
train neglect and refuse to deliver a baggage check, and, on the
contrary, eject the passenger from the train, the railroad com-
pany will be held liable in damages for the tort so committed.

3. Where a passenger purchases a ticket, and on the arrival of
the train at the station points out to the conductor and brakeman
his baggage, and they receive the same and take it on board the
train, and the passenger boards the same train for the purpose of
transportation to another station on the line of the company's road,
and demands of the conductor on the train a baggage check, he is
entitled to receive such check before delivering up his ticket or pay-
ing his fare, and on failure to receive such baggage check and
refusal to pay his fare until he does receive it, he does not thereby
become a trespasser on such train, and the employees of the com-
pany have no right to eject him from the train until they have
either delivered to him his baggage check or until he has reached
the station to which he notified the employees receiving the baggage
that he desired the same checked.

4. Under the provisions of sec. 2674, the liability to furnish the
passenger free transportation to the point of his destination in case

of refusal to deliver him a check for his baggage is as much a part of the penalty for refusal to check the baggage as is the $20 cash penalty named therein.

5. The requirement of sec. 2674, Rev. Stat., that a railroad company shall not collect toll or fare from a passenger when it fails, neglects or refuses to deliver the passenger a check for his baggage, is valid and binding upon such company as a part of the penalty for its failure and neglect to comply with the statute, and is in no sense a taking of property without due process of law within the inhibition of the fourteenth amendment to the constitution of the United States.

6. The instruction, "That every particular phase of the injury may enter into the consideration of the jury in estimating compensation, loss of time with reference to the injured party's condition and ability to earn money, his loss from permanent impairment of faculties, mental and physical pain, suffering and disfigurement, are all elements to be considered by the jury in estimating plaintiff's damages," while correct as a general principle of law, is erroneous in a case where there is no allegation of loss of time and no evidence has been introduced showing the loss of any particular or specified time or the value thereof or amount of damage sustained by reason of loss of time.

7. Where the court has instructed the jury that they must be governed by the evidence in assessing damages, and that they must find the data therefor within the evidence, and the entire record in the case discloses that no claim has been made for damages on account of loss of time, and no evidence has been introduced thereon, and it is reasonably clear from the record that the jury did not consider such element in assessing damages, an erroneous instruction to the effect that loss of time is a proper element to be considered in such cases is not within itself such error as will cause a reversal of the judgment.

8. It is unnecessary to submit any evidence as to a proper and just compensation to be awarded for wounded feelings and physical and mental pain and suffering and humiliation, but the compensation to be allowed therefor is a matter addressed to the judgment and good sense of the jury, and to be determined by them in view of all the evidence submitted in the case as to the wrongs and injuries inflicted.

9. All the instructions given in a case must be read and considered together as a whole, and where they are not inconsistent, but may be reasonably and fairly harmonized, it will be assumed that the jury gave due consideration to the instructions as a whole rather than to an isolated portion thereof.

(Syllabus by the court.)

APPEAL from the District Court of the Sixth Judicial District for the County of Bingham. Hon. J. M. Stevens, Judge.

Action by the plaintiff in tort for damages sustained on account of the wrongful acts of the defendant company in ejecting him from its railway train. Judgment for plaintiff, and defendant moved for a new trial and appealed from the judgment and order denying his motion. *Affirmed.*

P. L. Williams, and D. Worth Clark, for Appellant.

The construction of sec. 2374, Rev. Stat., contended for by respondent, is in violation of the fourteenth amendment of the federal constitution, because it would be depriving a railroad company of property without due process of law, and denying it equal protection of the laws. It would be compelling a railroad company to carry a person without reward, and would be upon principle subject to the same objections as a regulation of fares and freights on the part of the state, which required a railroad company to carry persons and property without reward. (Cooley on Const. Law, 261; *Railroad Commission Cases,* 116 U. S. 307, 331, 6 Sup. Ct. 334, 348, 349, 388, 391, 1191, 29 L. ed. 636; *Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418, 42 L. ed. 819.)

If the respondent was justified in refusing to surrender his ticket until he received his baggage check, his proper remedy for such ejection would seem to be an action for breach of contract to carry, and not an action in tort, upon the same principle that is applied in cases where a passenger refused to pay fare or surrender his ticket until he is furnished a seat. (*St. Louis etc. Ry. Co. v. Leigh,* 45 Ark. 368, 53 Am. Rep. 558; *Memphis etc. R. Co. v. Benson,* 85 Tenn. 627, 4 Am. St. Rep. 776, 4 S. W. 5.)

If we concede that respondent was wrongfully ejected, and that he is entitled to sue in tort, $1,000 is flagrantly excessive. (*Tarbell v. Central Pac. R. R.,* 34 Cal. 616; *Southern R. R. v. Hawkins,* 28 Ky. Law Rep. 364, 89 S. W. 258;

*Mobile etc. R. R. Co. v. Reeves,* 25 Ky. Law Rep. 2236, 80 S. W. 471; *Sloan v. So. Cal. Ry. Co.,* 111 Cal. 668, 44 Pac. 320, 32 L. R. A. 193; *Willson v. Northern Pac. R. R. Co.,* 5 Wash. 621, 32 Pac. 468, 34 Pac. 146; *McLean v. Chicago etc. R. R. Co.,* 50 Minn. 485, 52 N. W. 966; *Finch v. Northern Pac. R. R. Co.,* 47 Minn. 36, 49 N. W. 329; *Cunningham v. Seattle etc. R. R. Co.,* 3 Wash. 472, 28 Pac. 745.)

The court's instruction concerning loss of time with reference to the injured party's condition and ability to earn money in his business or calling was error, being neither pleaded nor proven. (*Gardner v. Burlington etc. R. R. Co.,* 68 Iowa, 588, 27 N. W. 768; *Fisk v. Chicago etc. R. R. Co.,* 74 Iowa, 424, 38 N. W. 132; *Elenz v. Conrad,* 115 Iowa, 183, 88 N. W. 337; *La Faye v. City of Superior,* 104 Wis. 454, 80 N. W. 742; *Haworth v. Kansas City etc. R. R. Co.,* 94 Mo. App. 215, 68 S. W. 111; *Texas etc. R. R. v. Goldman* (Tex. Civ. App.), 51 S. W. 275; *International etc. Ry. Co. v. Lock* (Tex. Civ. App.), 20 S. W. 855; *Southern R. R. Co. v. Hawkins,* 28 Ky. Law Rep. 364, 89 S. W. 258.) The same is true of that part of the instructions concerning loss from permanent impairment of faculties and disfigurement. (*Comaskey v. Northern Pac. R. R. Co.,* 3 N. D. 276, 55 N. W. 732; *Jackson v. City of Knoxville* (Iowa), 101 N. W. 88; *Goken v. Dallugge,* 72 Neb. 16, 99 N. W. 818, 101 N. W. 244, 103 N. W. 287; *Western Union Tel. Co. v. Morris,* 83 Fed. 992, 28 C. C. A. 56.)

Instructions similarly unwarranted were held erroneous in the following cases: *Barron v. Northern Pac. R. R. Co.* (N. D.), 113 N. W. 102; *Platt v. City of Ottumwa* (Iowa), 113 N. W. 831; *Reed v. Chicago etc. R. R. Co.,* 57 Iowa, 23, 10 N. W. 285; *Stafford v. City of Oskaloosa,* 57 Iowa, 748, 11 N. W. 668; *Cousins v. Lake Shore etc. R. R. Co.,* 96 Mich. 386, 56 N. W. 14; *Eckerd v. Chicago etc. R. R. Co.,* 70 Iowa, 353, 30 N. W. 615; *Meyer v. Reimer,* 65 Kan. 822, 70 Pac. 869; *Ringue v. Oregon etc. Co.,* 44 Or. 407, 75 Pac. 703; *Chicago etc. R. R. Co. v. Wheeler,* 70 Kan. 755, 79 Pac. 673; *Farmer v. Hughes,* 38 Colo. 318, 88 Pac. 191; *Atchison T. & S. F. R. R. v. Adcock,* 38 Colo. 369, 88 Pac. 180; *First*

*Nat. Bank v. Skinner,* 10 Kan. App. 517, 62 Pac. 705; *Holt v. Spokane & Palouse Ry. Co.,* 3 Ida. 703, 35 Pac. 39; *Gwin v. Gwin,* 5 Ida. 217, 48 Pac. 295; *St. Louis etc. Co. v. Blinn,* 10 Kan. App. 468, 62 Pac. 427.

G. F. Hansbrough, for Respondent.

Respondent was not compelled to surrender either of his tickets after demanding a check for his baggage; until the check was given to him all that he was called upon to do was to show them to the conductor, which he did do. Having shown that he had a right on the train, until they complied with this demand they had no right to collect fare from him, neither had they any right to eject him. (Sec. 2674, Rev. Stat.; *Hardenberg v. St. Paul M. & M. Co.,* 39 Minn. 3, 12 Am. St. Rep. 610, 38 N. W. 625.) Under the circumstances, plaintiff had a right to refuse to give up his ticket, and did not thereby become a trespasser. (*Hardenberg v. St. Paul M. & M. Ry. Co.,* 39 Minn. 3, 12 Am. St. Rep. 610, 38 N. W. 625.)

When a passenger is wrongfully expelled from a train, it is a breach of duty on the part of the carrier, and an action in tort will lie to recover damages. (Redfield on Carriers, sec. 422; Beach on Railways, sec. 887; *Gorman v. S. P. Co.,* 97 Cal. 2, 33 Am. St. Rep. 157, 31 Pac. 1112; *Head v. Georgia Pac. Ry. Co.,* 79 Ga. 358, 11 Am. St. Rep. 434, 7 S. E. 217; *Jones v. Steamship Cortes,* 17 Cal. 487, 79 Am. Dec. 142; *Sloan v. Southern Cal. Ry. Co.,* 111 Cal. 668, 44 Pac. 320, 32 L. R. A. 193; *Carsten v. Northern Pac. Ry. Co.,* 44 Minn. 454, 20 Am. St. Rep. 589, 47 N. W. 49, 9 L. R. A. 688; 6 Cyc. 565.)

Under the facts proven, the damages are not excessive. (*Aldrich v. Palmer,* 24 Cal. 513; *Gorman v. Southern Pac. Co.,* 97 Cal. 1, 33 Am. St. Rep. 157, 31 Pac. 1112; *Colorado Midland Ry. Co. v. O'Brien,* 16 Colo. 219, 27 Pac. 701; *Chapman v. Southern Pac. Ry. Co.,* 12 Utah, 30, 41 Pac. 551; *Hallack v. Johnson,* 12 Colo. 244, 20 Pac. 700; *Bushnell v. Metz,* 18 Ill. App. 84; *Sanderson v. Frazier,* 8 Colo. 79, 54 Am. Rep. 544, 5 Pac. 632; *City of Chicago v. Jones,* 66 Ill.

349; *Swain v. Fourteenth St. Ry. Co.*, 93 Cal. 179, 28 Pac. 829; *Taylor v. Cal. Stage Co.*, 6 Cal. 229; *Weaver v. Page*, 6 Cal. 681; *Morgan v. Southern Pac. Ry. Co.*, 95 Cal. 501, 30 Pac. 601.)   And the court will not disturb the verdict of the jury on that ground.   (*McLean v. Lewiston*, 8 Ida. 472, 69 Pac. 478; *Russel v. Dennison*, 45 Cal. 337; *Gorman v. Southern Pacific Ry. Co.*, 97 Cal. 1, 33 Am. St. Rep. 157, 31 Pac. 1112; *Aldrich v. Palmer*, 24 Cal. 513; *Morgan v. Southern Pacific Ry. Co.*, 95 Cal. 501, 30 Pac. 601.)

The measure of damages laid down in instruction No. 3, this being an action in tort, is correct, and every phase of the injury may enter into the consideration of the jury.   (1 Sutherland on Damages, 3d ed., sec. 93, and cases cited.)

If instruction No. 3 could be held erroneous by itself, it would be cured by defendant's instruction No. 11 (folios 228-230).   (*State v. Corcoran*, 7 Ida. 220, 61 Pac. 1034; *People v. McDonald*, 64 Cal. 476, 3 Pac. 124.)   The instructions given for both parties must be construed together, and when so construed, if they state the law correctly as a whole, any error appearing in one series will be deemed corrected by the other.   (Hughes' Instructions to Juries, sec. 71, and cases cited; *Lindsay v. Oregon etc. R. Co.*, 13 Ida. 477, 90 Pac. 984.)

AILSHIE, C. J.—This is an appeal from the judgment and order denying a motion for a new trial.   The appellant recovered judgment in the lower court against the defendant for the sum of $1,000 damages on account of the agents and employees of the defendant company wrongfully and unlawfully ejecting him from one of its railway trains.   The respondent, Jacob E. Tarr, was, on the 23d day of December, 1905, residing with his family at Shelley, Idaho, and on the evening of that day purchased from the ticket agent at that place three tickets to Pocatello.   It seems that the railway company had no night agent at Shelley, and that it was the practice of the company to take on baggage without the same being checked, on the passenger's pointing out his baggage to the conductor or brakeman or other employee of the com-

pany. About 2 o'clock on the morning of the 24th, the south-bound passenger arrived at the station where respondent, together with his wife and daughter, was waiting to board the train. When the train stopped, the respondent pointed out to the conductor and brakeman a trunk and roll of bedding he had on the platform, and told them that he wanted to take that baggage with him to Pocatello. When the respondent asked them to put the baggage on board, they made some profane remarks concerning it, but put the trunk on the baggage-car and left the roll of bedding. No question is raised here concerning the roll of bedding that was left on the platform. Respondent helped his wife and daughter on the train. After the train pulled out, the conductor came through taking up tickets and collecting fare, and when he came to respondent, the respondent gave him one ticket and told him that he had a trunk on board for which he wanted a baggage check. He also told the conductor that when he got his check for his trunk, he would give him the other two tickets. The conductor insisted on his surrendering up the tickets, but the respondent declined to do so. This demand for the tickets was made two or three times, the conductor telling him that if he did not surrender them he would put him off the train. Finally, when the train was about a mile out of the station of Blackfoot, the conductor came to respondent and told him if he did not surrender the tickets, he was going to put him off. Respondent replied that he would not do so unless the conductor gave him a check for his trunk. Thereupon the conductor called the brakeman and the two of them proceeded to eject the respondent from the train. Before they had completely ejected him, he told the conductor that he would not give up the tickets, but that if he would let him ride to Pocatello, he would pay the fare in cash. They disregarded this offer, however, and put him off the train. It seems to be generally agreed by all the witnesses that the train did not fully stop but "slowed up," as the witnesses put it. As the last coach passed, respondent swung onto the platform, and as he did so, he encountered the brakeman, who kicked him off, and in his endeavor to do

so, injured and bruised respondent's hands and dislocated a thumb. When he was kicked off the train he was either struck by the brakeman one blow on the back over the lungs and another over the kidneys, which made bad bruises, or else he received those injuries when he fell from the moving train. Respondent was under the care of a physician for a couple of weeks, and the physician testified that he had a bad bruise over his lung and also over his kidneys, and that he had incipient pneumonia, which might have been caused by the blow over the lungs.

The respondent contends that under the provisions of sec. 2674, he was entitled to demand and receive a check for his baggage before surrendering his transportation, and that he was entitled to remain on appellant's train until such time as he received a check for his baggage, or until he reached his destination. Appellant, on the other hand, contends that while the company would have been liable for the penalty prescribed in sec. 2674 for failing and neglecting to furnish the baggage check, notwithstanding that, respondent was not entitled to ride on the train without paying his fare or surrendering up his ticket. Sec. 2674 provides as follows:

"A check must be affixed to every package or parcel of baggage when taken for transportation by any agent or employee of a railroad corporation, and a duplicate thereof given to the passenger or person delivering the same in his behalf; and if such check is refused on demand, the railroad corporation must pay to such passenger the sum of twenty dollars to be recovered in an action for damages; and no fare or toll must be collected or received from such passenger, and if such passenger has paid his fare, the same must be returned by the conductor in charge of the train; and on producing the check, if his baggage is not delivered to him by the agent or employee of the railroad corporation, he may recover the value thereof from the corporation."

It will be seen from the foregoing provision of the statute that it is made the duty of the railway corporation to affix a check to every parcel of baggage and deliver a duplicate thereof to the owner. In this case, the company, having no

night agent at the station, received baggage on its being pointed out by the passenger, and was in the habit of attaching a check on the train and delivering the duplicate to the passenger. Our decision on this point turns upon the question as to whether the railway company had a right to demand the fare from respondent as a condition precedent to furnishing him with a check for his baggage. Was defendant justified in ejecting him from the train upon his refusal to surrender up his ticket or pay his fare? There can be no question but that he rightfully boarded the train. He had bought his ticket, had caused his baggage to be placed upon the train, and he had a lawful right to board appellant's railway train. The question is, then: Did he, after entering the car, do any act that converted him into a trespasser? The primary duty devolving upon the passenger is to pay his fare, and on the railway company, to carry the passenger. In addition to carrying the passenger, the company agrees to carry a certain amount of baggage with each passenger. In this case, the company received the respondent's baggage, and, under the provisions of the statute above quoted, was clearly liable to check the same and furnish a duplicate to the passenger. A failure to do so subjected the company to a certain penalty; first, to pay the sum of $20 as damages for the neglect and failure, and in addition thereto, defendant was prohibited from collecting or receiving any "fare or toll" from the passenger. Clearly, then, the passenger's transportation is made as much a part of the penalty as is the $20. Upon failure to furnish the passenger with his baggage check, it was not only liable to pay a $20 penalty, but it was also liable to carry the passenger free of "fare or toll" until such time as it should furnish such check or until he reached his destination, the point to which he had requested a check for his baggage. We do not think this statute is capable of any other reasonable construction. We therefore conclude that the respondent was rightfully upon the appellant's railway train, and his ejectment by the company's agents and employees was wrongful and unlawful and in violation of his rights. If it was unlawful for them to eject him, it was un-

lawful for them to keep him off the train. If he was right-fully on the train and they put him off, he had a clear right to return to the train, and their using force and violence in keeping him off was as much of a wrong and trespass upon his rights as it would have been for them to have used that violence on him in the first instance. This case, it must be remembered, involves transportation exclusively within the confines of this state, and is purely a domestic transaction.

Counsel for appellant have argued that the company in the discharge of its duty has a right to establish certain rules and regulations to facilitate business, and that, among other things, it was the duty of the passenger to pay his fare or surrender his ticket before demanding his baggage checked. The law does not say which act shall be performed first, but they are clearly concurrent duties, one resting upon the passenger and the other upon the transportation company. The passenger had an undoubted right to demand his baggage check. The company's agent in this case did not give him any assurance that they would ever furnish him a check for his baggage. The only assurance he ever had was that the conductor said to him: "You give me your tickets and if your baggage is lost, I think we can locate it for you later." This was far from an assurance that the conductor would discharge his duty under the statute and secure the passenger a check for his baggage before reaching his destination. We think the doctrine is correct as stated by Hutchinson on Carriers, vol. 2, sec. 1036 (3d ed.), cited by appellant, to the effect that passengers are required to show their tickets to the conductor at reasonable times and be subject to the reasonable requirements of the company. In this case, the company had already received the passenger's baggage on its train, and had complete charge and control thereof, and the conductor had received from the passenger one ticket and knew that he had two other tickets in his possession on the same train. A somewhat different rule would apply, we apprehend, where a prospective passenger takes his baggage to the depot and demands that it be checked. In such case, he would have to

produce a ticket, and if required, deliver it to the agent for the purpose of being punched.

Counsel for appellant insist that the statute, sec. 2674, *supra,* should not receive the construction we are placing on it, for the reason that such a construction would be in violation of the fourteenth amendment to the constitution of the. United States, in that it would deprive the railroad company of property without due process of law. Counsel admit that the company would be liable for the $20 penalty under the statute on a failure to furnish the passenger with a baggage check, but say it would be taking its property without due process of law to allow a passenger to ride without paying his fare. Such an argument is unsound, for the reason that free transportation under the condition named in the statute is no more a taking of property without due process of law than the collection of the $20 penalty. Indeed, we think one is as much a part of the penalty as the other. In the matter of transportation, the statute says the company shall not collect fare unless the check is furnished. As to the payment of the $20 penalty, the company might do that without action, or if it fails to do so, it is liable to an action for the recovery of the same. In this case, however, the company refused to carry the passenger as required to do by sec. 2674, and proceeded to eject him from the train. In doing so it committed a tort for which it is liable in this action.

This, it should be observed, is not an action for breach of the contract, but an action in tort to recover for the wrongs committed. The passenger is not endeavoring to collect the $20 penalty prescribed by the statute, but insists that he was rightfully on the appellant's train, and that he had a right to remain there until he reached his destination, and that under such circumstances the employee of the railroad company committed a tort for which this action has been prosecuted. This case is not parallel with, or subject to, the same rule that governs cases where a passenger goes upon a railway train and refuses to pay fare or surrender his ticket until he is furnished a seat. In those cases it is held that if he remains on the train, he must pay his fare, but that,

on the other hand, he may leave the train at the first opportunity and sue for a breach of the contract and recover his damages. (*Memphis etc. R. R. Co. v. Benson,* 85 Tenn. 627, 4 Am. St. Rep. 776, 4 S. W. 5; *Pittsburg R. R. Co. v. Van Houten,* 48 Ind. 90; *St. Louis etc. R. R. Co. v. Leigh,* 45 Ark. 368, 55 Am. Rep. 558; *Davis v. Kansas City etc. R. R. Co.,* 53 Mo. 307, 14 Am. Rep. 457.)

On the trial of this case, defendant's counsel objected to the introduction of evidence showing that the passenger when being ejected from the train offered to pay his fare if the employees of the company would permit him to continue on his journey. If it be conceded that it is a correct principle of law that a passenger after refusing to surrender his ticket or pay fare, and the employees of the company have commenced to eject him, cannot then offer to pay fare and reinstate himself in the right to continue on the train, then, of course, such evidence as was offered in this case would be immaterial and was improperly admitted. When it came to giving the instructions, however, to the jury, the court adopted the appellant's theory of the law and gave an instruction on its request to the effect that a "passenger who refuses to pay his fare or furnish and deliver up a ticket good for such transportation, and on account of such refusal the train is stopped for the purpose of ejecting him, he cannot then, by a tender of his fare or an offer to deliver up his ticket, reimpose upon the carrier the duty of carrying him." In the case at bar, this question became entirely immaterial, and evidently did not enter into the consideration of the jury in making up their verdict, for the reason that the passenger was rightfully on the train, and the company had no right to eject him in the first instance.

The next and most serious question that arises on this appeal is directed against the instructions given by the court to the jury. The objectionable instruction is plaintiff's request No. 3, which is as follows: "The jury is instructed that every particular phase of the injury may enter into the consideration of the jury in estimating compensation, loss of time with reference to the injured party's condition and ability

to earn money in business or calling; his loss from permanent impairment of faculties, mental and physical pain, suffering and disfigurement, are all elements to be considered by the jury in estimating plaintiff's damage, if you find from the evidence that plaintiff is entitled to recover.'' The causes and injuries for which plaintiff demanded damages in his complaint are in substance as follows: ''A bad bruise on the back over the left lung; a bad bruise over the left kidney; his right hand badly bruised and sprained and two bruises on both legs and hands, and by reason of the insult, humiliation and the bodily and mental suffering of the plaintiff, caused by the said unlawful acts of the defendant in forcibly, violently and unlawfully assaulting, bruising and ejecting the plaintiff from its said train of cars.'' Damages were claimed for these injuries in the sum of $1,975. On the trial, no evidence whatever was introduced showing any particular or specific loss of time nor the value of any time lost, nor was there any evidence introduced showing the amount paid out for medical attention or for any other item of loss, damage or injury, and no evidence whatever was given placing an estimate as to a just compensation for the injuries sustained. The court also instructed the jury that for mental and physical injury and suffering and for humiliation and wounding a man's feelings, the measure of damages was a question entirely for the jury to determine as nearly as possible from the evidence in the case. The court also instructed the jury that they must be governed by the evidence, and that if they should find for the plaintiff, they could only assess such damages as they found him entitled to from the evidence.

Defendant's requested instruction No. 11 was given by the court, and that instruction also advised the jury that if they found in favor of the plaintiff, the only damage they could assess was such as was within the evidence and justified thereby, and that they must secure their data from the evidence itself upon which they calculated and assessed the damages.

It must be conceded in the outset that the plaintiff's requested instruction No. 3 as given by the court, while en-

tirely correct as a general principle of law, was improper and erroneous in this particular case, for the reason that no claim appears to have been made on account of loss of time, and that no evidence was given showing the loss of any particular or specific amount of time or the value thereof.

It is well settled that as to mental and physical pain and suffering and humiliation, it is unnecessary to submit any evidence as to the value thereof and the amount of damages to compensate therefor, but that the same is a question entirely and exclusively for the jury. (*North Chicago St. Ry. Co. v. Fitzgibbons,* 180 Ill. 466, 54 N. E. 483; *Springfield Consol. Ry. Co. v. Hoeffner,* 175 Ill. 642, 51 N. E. 885; Sutherland on Damages, 3d ed., sec. 1243; Hughes' Instructions to Juries, secs. 652, 653.)   On the other hand, it is equally well settled that where the party claims special damages for loss of time, he must prove both the amount of time lost and the value thereof, and that the jury must be governed by the evidence in relation thereto. (*Western Union Tel. Co. v. Morris,* 83 Fed. 992, 28 C. C. A. 56; *Pratt v. City of Ottumwa* (Iowa), 113 N. W. 831; *Barron v. Northern Pac. Ry. Co.* (N. D.), 113 N. W. 102; *Gardner v. B. C. R. & N. R. Co.,* 68 Iowa, 588, 27 N. W. 768; *Southern Ry. Co. v. Hawkins,* 28 Ky. Law Rep. 364, 89 S. W. 258.)

It will be seen, however, on an examination of the authorities, that where a case has been reversed on account of such an instruction, it has been where there was either evidence of loss of time and no evidence of its value, or where the court had told the jury that they might assess the damages for loss of time without any evidence as to its value or without reference to such evidence if any had been given.   The latter condition is peculiarly noticeable and prominent in *Pratt v. City of Ottumwa, supra.*   In the case at bar, there is no evidence of any particular or specific loss of time, and the most that could be said in that regard would be that it contained a mere inference of the loss of some period of time less than two weeks while respondent was receiving medical treatment, and no evidence whatever as to the value of any time lost. The record is convincing from the complaint to the last word

of evidence and instruction .in the case that the real cause for which the plaintiff was seeking to recover damages, and against which the defendant was waging its defense, was the physical and mental suffering, pain and humiliation as the direct and immediate result of the wrongful acts of the railway company in ejecting plaintiff from its train. The record nowhere contains any suggestion or intimation that the jury was asked to give the plaintiff any special damages on account of loss of time. The question then arises whether the error committed in giving plaintiff's instruction No. 3 was, under the facts and circumstances of this case, and in view of the evidence produced, and of the other instructions given, such an error as prejudiced any substantial right of the defendant for which this court would be justified in reversing the judgment under the purview of sec. 4231, Rev. Stat. In the first place, we must assume that the jury were reasonable and fair-minded men, and limited their finding as to the plaintiff's damages to that shown by the evidence in the case as they were instructed by the court. In the second place, there is nothing in the record that indicates that the jury were acting under any sense of passion, prejudice or bias. The evidence is abundant to justify the verdict without taking into consideration any loss of time whatever or any other element of damages except that of physical and mental pain and suffering and humiliation consequent upon plaintiff's unlawful ejection from the train. Indeed, we think the appellant company were, under the facts and circumstances of this case, exceedingly fortunate in reducing plaintiff's demand to the sum allowed by the jury. In the third place, there is nothing in the record that suggests or intimates that the jury took into consideration loss of time in estimating damages, or any other matter than that entirely proper for their consideration.

Lastly, instruction No. 3 is a correct general principle of law, and although there was no allegation in the complaint, and no evidence in the case claiming damage for the one element, namely, loss of time, mentioned in this instruction, we think it would be far-fetched and illogical for an appellate court to hold that under such facts and circumstances the

judgment should be reversed, and thereby assume that the jury went outside of the pleadings and proofs under such an instruction as this in order to render an unjust verdict against the defendant. There is no doubt but that the court should not give an instruction on a question of law that is not involved in the pleadings or proofs, but we are equally satisfied in this case that the appellant has not been prejudiced or injured or damaged on account of the instruction, and we are unwilling to reverse the judgment for that reason.

Again, we have repeatedly held that all the instructions given in a case must be read and considered together as a whole, and that where they are not inconsistent but may be reasonably and fairly harmonized, it will be assumed that the jury gave due consideration to the whole instruction rather than to an isolated portion thereof. (*Lufkins v. Collins,* 2 Ida. 256, 10 Pac. 300; *State v. Cochran,* 7 Ida. 220, 61 Pac. 1034; *Hansen v. Haley,* 11 Ida. 293, 81 Pac. 935; *State v. Bond,* 12 Ida. 424, 86 Pac. 43; *State v. Niel,* 13 Ida. 539, 90 Pac. 960, 91 Pac. 318.)

The other instructions given by the court we think correctly stated the law, and the assignments of error in reference thereto are without merit. All of the defendant's requested instructions that correctly stated the law were given, either literally or in substance by the court. Those rejected were clearly erroneous and properly refused by the court. We think the judgment in this case is a just one, and that no sufficient grounds have been shown why it should be reversed. Judgment is affirmed with costs in favor of respondent.

Sullivan, J., and Stewart, J., concur.