434 P.2d 79

Bernard J. ARCHER, Estella A. Archer, Herman A. Flottman, Dorothy Flottman, Elva A. Erickson, Claude A. Hutchins, Plaintiffs-Respondents,

v.

SHIELDS LUMBER CO., Inc., Defendant-Appellant.

No. 9579.

Supreme Court of Idaho.

Nov. 22, 1967.

Fred F. Kondo, Priest River, Stephen Bistline, Sandpoint, for appellant.

Lyons & Hofmeister, Sandpoint, Edmund T. Brigham, Newport, Wash., for respondents.

SPEAR, Justice.

Respondents brought this action jointly as owners of certain tracts of real property situated adjacent to appellant's sawmill. They alleged that appellant's dry kiln and burner had been negligently and carelessly equipped with a semi-spherical top-screen from January 1, 1961, to the date of this action (November 20, 1963), thereby emitting burning debris, soot, smoke, and partly-burned sawdust which was carried onto their land by prevailing winds. They also alleged that this debris constantly seeped into their residences and covered their porches, lawns and truck gardens, spoiling all leafy vegetables growing therein and causing plaintiffs substantial and continued annoyance, harassment and extra cleaning work. Furthermore, they complained that these burning embers have caused them continued and justifiable apprehension and fear that a fire would ensue as a result.

Respondents Archers alleged separately that appellant's employees were forced to trespass onto their property to relieve themselves because appellant had failed to supply adequate sanitary facilities, thereby contaminating a certain spring or small well located upon their property, such well being the only source of Archers' domestic water supply. They further alleged this practice was known, or should have been known with the exercise of reasonable diligence, to appellant, and proximately caused them damages estimated at $10,000.

Respondents Archers and Flottmans further complained that a fence maintained between their boundary lines was broken numerous times as a result of appellant's employees negligently stacking logs too close to that fence. Repairs to this fence over the period herein were alleged in the sum of $250 to each party, but Archers abandoned this cause during the trial.

Respondents jointly alleged that, as a proximate cause of appellant's acts, their several parcels have each depreciated $10,000 in value; and that they have experienced substantial and uninterrupted annoyance, mental suffering, and inconvenience to their respective detriment in the sum of $5,000.

The jury returned a verdict in favor of respondents as follows:

(1) For Archers the sum of $1,000

(2) For Flottmans the sum of $500

(3) For Erickson and Hutchins jointly the sum of $250

Appellant's motion for a judgment notwithstanding the verdict under Rule 50(b)

and a motion for a new trial under Rule 59(a) I.R.C.P. were denied, and from such order and the final judgment entered upon the jury's verdict, appellant has appealed.

Appellant assigns eighteen specifications of error but they may be discussed in five groups, i. e., (1) the premature giving of instructions to the jury prior to the introduction of any evidence at the trial; (2) instructions on the issue of nuisance, when nuisance had not been properly pleaded in the complaint; (3) instructions and evidence concerning the measure of damages to which respondents were entitled; (4) court's refusal to give some requested instructions of appellant because not submitted five days prior to trial in accordance with a local rule of that judicial district, though some other instructions requested by appellant at the same time were, in fact, given; and (5) failure of the trial judge to submit instructions to counsel prior to giving the same to the jury as provided in Rule 51 I.R.C.P.

In addition to that portion of the complaint in which the Archers allege they were damaged by the contamination of their water supply through deposits of urine and human feces by employees of the appellant company which had neglected to furnish proper sanitary facilities at the mill for such employees, the pertinent part of respondents' allegations are as follows:

"4.

"Continuously ever since about 1 Jan 1961, defendant has been, and still ·is, * * * in possession of * * * and operating on its real estate a saw-mill, a dry-kiln and a burner, which last is truncated-cone in shape. Throughout the period just mentioned that burner has been, and still is, negligently and carelessly equipped with a semi-spherical top-screen, too small in size, thus leaving flames, burning debris, and partly-burned debris to escape from the substantial portion of the top of that burner over which the top-screen above described fails to extend.

"5.

"Throughout the period from about 1 Jan 1961 to the present date, winds prevailing in the area of the real estate of plaintiffs and of defendant described above have carried smoke, soot, burning embers, and partly-burned sawdust, in huge and continued quantities, onto the parcels of real estate of plaintiffs above described. Throughout that period plaintiffs have been, and still are, maintaining residences, and attempting to maintain truck gardens, on their respective parcels of real estate above described, and the debris from defendant's above burner has constantly seeped into those residences and covered their porches and approached [s] and their laws and truck gardens (and spoiling all leafy vegetables growing in the last-named), and causing plaintiffs substantial and continued annoyance, vexation, harassment and extra cleaning work. Furthermore, part of the real estate parcels of plaintiffs above · described are covered with brush and timber, and the constant deposit by defendant upon plaintiffs' properties of the burning embers (some of which are of considerable size) has caused plaintiffs great and continued and justifiable apprehension and terror that those burning embers would start a forest fire and consume plaintiffs' properties and possibly plaintiffs themselves."

After alleging that such acts by appellant caused the real estate of each set of respondents to depreciate in value in the amount of $10,000 each, the respondents further allege:

"9.

"As a proximate consequences of the acts of defendant above complained of, plaintiffs experienced substantial continued and uninterrupted annoyance, mental suffering, and inconvenience to their respective damages as follows: plaintiffs Archer, in the sum of $5,000; plaintiffs Flottman, in the sum of $5,000; and plaintiffs Hutchins and Erickson jointly, in the sum of $5,000."

At the beginning of the trial counsel for the plaintiffs-respondents made a brief statement concerning what was involved in the cause, and the jury was selected and sworn. Immediately thereafter and prior to the introduction of any evidence whatever the trial judge, as was his usual custom, gave some instructions to the jury. Exactly what was contained in these sixteen instructions is unknown to this court, for although appellant specifically requested, and the order for the reporter's transcript specifically provided for, inclusion of these instructions in the transcript, they do not appear therein. No explanation is given of record. However, it is contended in appellant's brief that instructions numbers 6 through 12 given by the court at the conclusion of the trial and which are included in the reporter's transcript were those to which he objected to being given at the beginning of the trial. This contention is not refuted by respondents, so we assume this is true. These instructions are as follows:

## "INSTRUCTION NO. 6

"A sawmill or planing mill is not a nuisance per se, but its location and manner of operation may constitute it a nuisance in fact, for example where the noise or the dust or the smoke or the soot or the cinders or the sawdust, or a combination of any two or more of these factors, unreasonably interfere with the enjoyment of their property by landowners adjoining or nearby who are not abnormally sensitive to above factors or to any combination of them.

## "INSTRUCTION NO. 7

"Under the laws of Idaho, anything which is injurious to health or offensive to the senses, or an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life or property, is a nuisance. Damages may be recovered by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance."

## "INSTRUCTION NO. 8

"The depositing of offensive substances, such as human urine or human feces or excreta, upon a neighbor's land constitutes a nuisance as to that neighbor for which he is entitled to recover such damages, if any, as he has sustained. Therefore, with regard to plaintiffs Archer, if you find from a preponderance of the evidence that such offensive substances were deposited on the Archers' land, then and in that event, and provided the evidence in this regard fulfills the requirements of the other instructions on this particular point, the Archers are entitled to recover from defendant. It is not essential to such recovery by the plaintiffs Archer that you should find by preponderance of the evidence that their water supply was contaminated; however, if you do so find, that fact is an element which you must consider in assessing the amount of the damages sustained by the Archers through the depositing of those offensive substances.

## "INSTRUCTION NO. 9

"You are instructed that a land owner may use his land in any manner which he sees fit provided it is not for an unlawful purpose, but he shall so use and enjoy his property that his use of it shall not be injurious to the equal enjoyment by others of their adjoining or nearby property.

## "INSTRUCTION NO. 10

"If from a preponderance of the evidence you find that during the period from about 1 Jan 1961 until about 1 Aug 1962 defendant's employees continuously trespassed upon the real estate of plaintiffs Archer and there deposited urine and human feces or excreta and that those deposits contaminated plaintiffs Archer's water supply, and that this practice of its employees was known to defendant, or, with the exercise of reasonable diligence, should have been known to defendant, and that such trespass upon the Archers' real estate by de-

fendant's employees was proximately due to the fact that defendant, during the period above mentioned, failed to provide toilet facilities for its employees on its own premises, and failed to allow its employees, during their work period, time intermissions long enough for those employees to relieve themselves elsewhere than in the immediate vicinity of defendant's property, then and in that event under the law defendant is responsible for such above-described acts of its employees and liable to plaintiffs' Archer for their damages, if any, which proximately resulted from such conduct by defendant's employees.

## "INSTRUCTION NO. 11

"Damages for mental pain and suffering personal discomfort and annoyance if any you find from the evidence sustained by the plaintiffs, or by any of them, are susceptible to proof only with an approximation of certainty and it is solely for you the jury to estimate them, if any you find, as best you can by reasonable probability, based upon your sound judgment as to what would be just and proper under all the circumstances which you find to be shown by the evidence.

## "INSTRUCTION NO. 12

"Shock and nervousness, if any you find from the evidence, suffered by the plaintiffs or by any of them, is an element that must be considered by you in determining the amount of damages, if any, to be awarded to plaintiffs, or to any of them."

It will be noted appellant urges no error by the trial judge in giving the other instructions prior to the introduction of the evidence; it is assumed, therefore, these were merely general in nature—the so-called "stock instructions" which must be given to every jury in a civil action.

Immediately upon the completion of the reading of such instructions to the jury, attorney for appellant (after the jury had been excused) moved the court to direct the jury to disregard the instructions or to grant a mistrial primarily because (1) an entirely new issue, that of nuisance, had been interjected into the action to the surprise of appellant, and (2) the court had erroneously instructed the jury concerning the damages allowable to respondents in several particulars. These motions were denied by the trial court. Counsel for appellant protected the record throughout the trial by timely objecting to the admission of any evidence concerning the operation of a nuisance by appellant company.

■ Concerning appellant's contention that the trial court prematurely gave instructions to the jury, the regular order of trial in a civil action is set forth in I.C. § 10–206, which provides in effect that the instructions should ordinarily be read to the jury by the court when the evidence is concluded and before the case is argued to the jury; however it is specifically provided in the preamble of this section that "* * * the trial must proceed in the following order *unless the judge for special reasons otherwise directs: * * *.*" (emphasis supplied) Thus it is discretionary with the trial judge when he shall read the written instructions to the jury. Schmidt v. Williams, 34 Idaho 723, 203 P. 1075; Byington v. Horton, 61 Idaho 389, 102 P.2d 652. There is nothing in the provisions of Rule 51 I.R.C.P. depriving the trial judge of this statutory discretion.

■ It has become the custom of some of the trial judges in the State of Idaho to give what is commonly referred to as the "stock instructions" at the very beginning of a trial after a jury has been selected and prior to the introduction of any evidence for the purpose of better acquainting the members of the jury with the exact issues involved in the cause to be heard by them as set forth in the pleadings and the pre-trial order if any has been entered. At the same time the jury is advised concerning the burden of proof of these various issues and terms such as "preponderance of the evidence," "negligence," "proximate cause," "contributory negligence," "assump-

tion of risk," and other terms with which they should be familiarized, as applicable in the cause at hand. Additionally the jury can at this time be informed as to some of its duties and obligations such as being the finder of the facts, the judges of the credibility of witnesses and the like. Ordinarily this would not entail the giving of more than five or six instructions, and the giving of them to the jury at this time would make unnecessary the repetition thereof at the completion of the evidence and before the arguments of counsel. There can be nothing prejudicial to either party in such procedure. However, in the case at hand the trial judge went far beyond the giving of mere "stock instructions." Such procedure is not condoned by this court but is a practice which should be discouraged for the instructions concerning damages and the like would more appropriately be given after all evidence has been adduced. However, we hold that the giving of the additional instructions in this particular instance did not result in prejudicial harm to the appellant sufficient to require reversal of the jury's verdict and the judgment entered thereon.

The next group of specifications of error concerns the court's giving of instructions on the issue of nuisance thus, as contended by appellant, raising an issue which had not been properly pleaded in the complaint. A "nuisance" is statutorily defined in Idaho as "[a]nything which is injurious to health or morals, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life· or property, * * *." I.C. § 52–101. Another Idaho statute, I.C. § 52–111, provides as follows:

"Anything which is injurious to health or morals, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance and the subject of an action. * * * in all other cases the action may be brought by any person whose property is injuriously affected,

or whose· personal enjoyment is lessened by the nuisance; and by the judgment the nuisance may be enjoined or abated, as well as damages recovered."

Although the word "nuisance" is not specifically mentioned in respondents' complaint, under the provisions of Rule 8(a) I.R.C.P. a pleading which sets forth a claim for relief (respondents' complaint) need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in addition to alleging jurisdiction of the court and a demand for judgment to which the pleader claims he is entitled. Additionally Rule 8(f) I.R.C.P. provides that "[a]ll pleadings shall be so construed as to do substantial justice." As stated in Moore's Federal Practice, Second Edition, Vol. 2A, par. 8.02, p. 1611, after citing the Federal Rule which is identical to Rule 8(f) I.R.C.P. as quoted above:

"That is the mandate of this rule. It epitomizes the objective of all the rules governing pleadings. The need for a flexible, workable court procedure cannot be over emphasized. Flexibility can well start with pleadings. In Conley v. Gibson [355 U.S. 41, 78 S.Ct. 99, 2 L.Ed. 2d 80] the Supreme Court emphasized the proper role of pleadings in this manner:

"'* * * the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. * * * The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be

decisive of the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'"

Thus pleading under the new rules (I.R.C.P.) is intended to be simpler and more flexible than the code pleading under I.C. § 5–605; but even under the requirements of that statute, all the pleader was required to allege in the complaint was "[a] statement of the *facts constituting the cause of action,* in ordinary and concise language." (emphasis supplied) This court in construing that statute (I.C. § 5–605) often held that the technicalities of pleadings had been dispensed with and that the plaintiff need only state his cause of action in ordinary and concise language without regard to the ancient forms of pleadings and that *every reasonable intendment would be* made to sustain a pleading. Stone v. Bradshaw, 64 Idaho 152, 128 P.2d 844, and the cases cited therein; *Curtis v. Siebrand Bros. Circus and Carnival Co.,* 68 Idaho 285, 194 P.2d 281. As early as 1910 this court held that "the sufficiency of the pleading must be determined upon the *facts pleaded,* rather than upon any name given to the pleading or the cause of action." Bates v. Capital State Bank, 18 Idaho 429, at 434, 110 P. 277, 278.

■ Either under the new rules or under the code pleading it is difficult to perceive how the plaintiffs Archers could have more plainly alleged facts constituting a nuisance when they alleged the depositing of urine and human feces by employees of the appellant company through the neglect of the company to furnish proper sanitary facilities at the mill, this practice having persisted for one full season, from April until December, in 1961, and from April to July in 1962, all of which was known or should have been known to the company, and that such deposits had resulted in the contamination of their domestic water supply. Moreover, in alleging the facts that the debris from the defendant's burner had constantly seeped into their residence, covered their porches, lawns and truck gardens, causing respondents substantial and continued annoyance, vexation, harassment and extra cleaning work, and further alleging that the acts of the appellant company caused respondents to experience substantial continued and uninterrupted annoyance, mental suffering and inconvenience, respondents alleged sufficient facts to place the appellant company on notice that they were demanding relief for a nuisance maintained by the appellant. Therefore, there is no merit to appellant's contention that it was surprised when the trial court instructed the jury at the beginning of the trial that nuisance was an issue in the cause before them.

■ We now address ourselves to the third group of appellant's specifications of error, i. e., the giving of instructions and the admission of evidence concerning the measure of damages. These fall into two categories, (1) proper measure of damages for temporary injury to real property, and (2) permitting shock, nervousness, mental pain and suffering, and "injury to health" to be considered as elements of damages where there is no evidence of any actual physical injury. Appellant contends that the proper measure of damages for temporary injury to real property is the amount necessary to repair the injury and restore the realty to its former condition, with interest from date of injury, citing Boise Valley Construction Co. v. Kroeger, 17 Idaho 384, 105 P. 1070, 28 L.R.A.,N.S., 968; Young v. Extension Ditch Co., 13 Idaho 174, 89 P. 295; and Casey v. Nampa and Meridian Irrigation District, 85 Idaho 299, 379 P.2d 409. However, appellant admits there is a split in the authorities on this question and that some jurisdictions hold that diminution in the rental or usable value of the property is deemed to be the proper measure of damages for temporary injuries to real property. The trial court permitted the owners of the properties involved (respondents herein) to testify as to how much the usable value of the property had been decreased through the acts of appellant in depositing debris, etc., from the burner

upon their properties. Appellant contends that at the very best this should have been limited to the loss in rental value or use value to some *third person* rather than the owner of the property himself. We are not required to determine this question, nor are we required to determine whether or not it was error for the trial court to instruct that shock, nervousness, mental pain and suffering, and injury to health, without evidence of actual physical injury, constituted recoverable damages. Assuming the admission of such evidence and the giving of such instructions were in fact erroneous, the meagre amount awarded to the respondents for the annoyance and inconvenience suffered by them through the operation of the burner by appellant company strongly indicates that the jury did not take into consideration the evidence and instructions objected to by appellant. It was properly pleaded and proven that each of respondents had suffered annoyance, vexation, harassment and inconvenience through operation of the company mill and burner by the deposit of sawdust and burning debris on their property, by loss of ventilation in their homes, by the accumulation of sawdust on their clothing and articles of furniture within their homes, by making impossible the use of their residences for outside meals, by necessitating the keeping of their vehicles closed to avoid debris being deposited therein, and by living in fear of fires caused by the burning debris emitted from appellant's mill. This court has frequently held, in effect, that even though certain elements of damages have been erroneously submitted to a jury and erroneous instructions thereon have been given to a jury, such errors will be held non-prejudicial where other evidence is abundant to justify the verdict without taking into consideration the erroneously admitted evidence and the erroneous instructions. Tarr v. Oregon Short Line R. R. Co., 14 Idaho 192, 93 P. 957; Tucker v. Palmberg, 28 Idaho 693, 155 P. 981; Austin v. Brown Bros. Co., 30 Idaho 167, 164 P. 95; Boise Association of Credit Men v. Royal Insurance Company, 44 Idaho 249, 256 P. 523; Nichols v. Sonneman,

Idaho, 418 P.2d 562 (1966). This principle is also recognized in other jurisdictions. See McIvor v. Mercer-Fraser Company, 76 Cal.App.2d 247, 172 P.2d 758 (1946); Harding v. H. F. Johnson, Inc., 126 Mont. 70, 244 P.2d 111 (1952); Clawson v. Walgreen Drug Co., 108 Utah 577, 162 P.2d 759 (1945). This principle and the reasoning upon which it is based is aptly stated by this court speaking through Chief Justice Ailshie in the 1908 opinion in Tarr v. Oregon Short Line R. R. Co., supra, as follows:

"In the first place, we must assume that the jury were reasonable and fair-minded men and limited their finding as to the plaintiff's damages to that shown by the evidence in the case as they were instructed by the court. In the second place, there is nothing in the record that indicates that the jury were acting under any sense of passion, prejudice, or bias. The evidence is abundant to justify the verdict without taking into consideration * * *."

the element of damages erroneously included in the instruction objected to in that case.

"In the third place, there is nothing in the record that suggests or intimates that the jury took into consideration loss of time in estimating damages, or any other matter than that entirely proper for their consideration.

"* * * [W]e think it would be far fetched and illogical for an appellate court to hold that under such facts and circumstances the judgment should be reversed, and thereby assume that the jury went outside of the pleadings and proofs under such an instruction as this in order to render an unjust verdict against the defendant. There is no doubt but that the court should not give an instruction on a question of law that is not involved in the pleadings or proofs, but we are equally satisfied in this case that the appellant has not been prejudiced or injured or damaged on account of the instruction,

and we are unwilling to reverse the judgment for that reason."

Thus because of the verdict rendered by the jury the errors in instructions and admissibility of evidence claimed by the appellant are deemed non-prejudicial and non-reversible.

■■ According to the court's notation on the bottom thereof, appellant submitted thirteen requested instructions a few hours before the close of the trial, and with the exception of three of them the court refused such instructions, on two grounds: (1) that they were not submitted according to the local judicial district's rule that instructions should be submitted to the court not less than five days prior to trial; and (2) that they were otherwise covered in the instructions given. Appellant contends this is reversible error, but there is no merit to this contention for two reasons. First, under Rule 51 I.R.C.P. it is provided that:

"At the close of the evidence or *at such time as the court reasonably directs or permits,* any party may file written requests that the court instruct the jury on the law as set forth in the requests. * *"

There is nothing unreasonable in the requirement that counsel file with the court at least five days prior to trial the instructions which he intends to present to the court on the issues which he can reasonably foresee being involved in the trial. Such instructions are invaluable to the trial judge in his preparation for presiding over a jury trial, especially since the pleading rules have been so liberalized under the Idaho Rules of Civil Procedure; for in many instances without the aid of the proposed jury instructions a court may be almost totally uninformed of the actual issues involved. This is particularly true in instances where no pre-trial conference has been held and there is no showing of record in the cause at hand of any pre-trial conference. Of course this rule should not be enforced as to issues which appear during the course of the trial, but were not reasonably foreseeable prior to the trial. On such issues counsel should be permitted to file requested instructions at any time after the issue appears and before the instructions are given to the jury by the court.

Secondly, as indicated by the court, all the matters and things contained in defendant's requested instructions which were not, in fact, given were substantially covered in the instructions which were given by the court to the jury at the close of the case and just prior to arguments of counsel.

■ Finally, appellant contends it was reversible error on the part of the trial court in failing to comply with that portion of Rule 51 I.R.C.P. which provides: "The court * * * shall submit to the parties the instructions that will be given, and provide opportunity to make objections." The record fails to disclose either compliance or noncompliance with this rule, but assuming for the purpose of this portion of the opinion that there was noncompliance, it cannot be deemed of sufficient prejudicial error to warrant a reversal of the verdict and judgment. It will be noted that Rule 51 also provides that: "The failure to object to any instruction given by the court shall not preclude any party to the action from assigning as error on appeal any erroneous instruction given or any omission by the court to give a proper instruction." Thus the rights of the parties are adequately protected on appeal whether or not the instructions are submitted to counsel in advance and, if submitted, no objection thereto is taken.

Under the Federal Rules of Civil Procedure arguments of counsel are given *prior* to the court's instructions to the jury. Under the Federal Rule 51, it is provided that: "The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury * * *" and obviously it is important to counsel to know what is contained in the court's instructions before arguing to the jury. However, even under this rule, it is not meant to be a trap for the judge nor an indispensable ritual for all cases, and the inadvertent failure of the judge to give this information

# 870

to counsel does not require a new trial or reversal on appeal except in those cases where counsel had been prejudiced by the failure. Barron & Holtzoff, Federal Practice and Procedure, Vol. 2A, § 1102, p. 449. Additionally, in the cause at hand there appears of record no request on the part of appellant for the submission of the instructions to the parties by the court prior to reading the same to the jury. It is difficult to see how appellant could have been prejudiced by the failure of the trial court to comply literally with the provision of Rule 51 relied upon, and such omission cannot be held to constitute reversible error.

 Full disposition of appellant's appeal requires discussion of appellant's "specifications of error" in his motion for a judgment notwithstanding the verdict or in the alternative for a new trial, from a denial of which motions appeal was regularly taken. As a ground for such motions, among other things, appellant contended that the evidence is insufficient, both as to the liability, and as to damages, to justify the verdict. Without detailing the evidence adduced at the trial on these questions of fact, suffice it to say that although the evidence was conflicting in many respects there was substantial competent evidence from which the jury could have found liability on the part of the appellant company for damages in the rather nominal amounts awarded to each of the respondents. Such verdict and the judgment entered thereon will not be set aside by this court on appeal. National Produce Distributors, Inc. v. Grube, 78 Idaho 33, 297 P.2d 284. Also it appears a rule of long standing in this jurisdiction that the trial courts possess a discretion to be exercised wisely in granting or refusing new trial, and at least in instances where the motion for a new trial has been *denied* such discretion will not be disturbed by the appellate court unless it clearly appears to have been exercised unwisely and to have been manifestly abused. Baldwin v. Ewing, 69 Idaho 176, 204 P.2d 430, and cases cited therein; National Produce Distributors, Inc. v. Grube, supra;

Grimm v. Harper, 84 Idaho 220, 370 P.2d 197; Blains v. Byers, 91 Idaho 665, 429 P.2d 397 (1967); Warren v. Eshelman, 88 Idaho 496, 401 P.2d 539 (1965). No such abuse of discretion appears from the record in this issue. Additionally, the general rule which prevails in this jurisdiction is that a motion for a new trial should not be granted unless it appears that a different result would follow a retrial. Blaine v. Byers, supra; Consumers Credit Co. v. Manifold, 65 Idaho 238, 142 P.2d 150, and cases cited therein.

The trial court, therefore, committed no error in denying appellant's motion for a judgment notwithstanding the verdict and his motion for a new trial. Judgment affirmed. Costs to respondents.

TAYLOR, C. J., SMITH and Mc-QUADE, JJ., and NORRIS, District Judge, concur.