607 P.2d 422

FARMERS INSURANCE GROUP,
Plaintiff-Respondent,

v.

Michael B. SESSIONS and Geoffrey
McIntosh, Defendants-Appellants.

No. 13119.

Supreme Court of Idaho.

Feb. 28, 1980.

Curtis H. Eaton of Stephan, Slavin, Eaton & Stephan, Twin Falls, for defendants-appellants.

John A. Doerr and Kevin F. Trainor, Twin Falls, for plaintiff-respondent.

McFADDEN, Justice.

On March 12, 1976 defendant-appellant Michael B. Sessions was involved in an altercation at the Outlaw Inn in Twin Falls, as a result of which defendant-appellant Geoffrey McIntosh was allegedly injured and brought suit against Sessions in a separate action.

At the time of the altercation Sessions was insured by plaintiff-respondent Farmers Insurance Group against liability for personal injury. Farmers brought this action seeking a declaratory judgment that language of exclusion in the policy relieves it of any liability for Sessions' actions in injuring McIntosh.

The policy obligates Farmers

"To pay all damages which the insured becomes legally obligated to pay because of bodily injury to any person . . . caused by an occurrence to which this insurance applies."

The pertinent exclusion relieves Farmers of liability for

"bodily injury or property damages caused wilfully, intentionally or maliciously by or at the direction of the insured, or for which any insured may be held legally liable because of the wilful, intentional or malicious acts of any other persons."

Farmers argues that because Sessions acted intentionally in injuring McIntosh it must be relieved of liability under this exclusion. After filing its complaint Farmers moved for summary judgment. Defendant McIntosh moved to dismiss and submitted affidavits. The trial court held that Ses-

sions acted intentionally, and that the policy excluded liability for intentional acts. It therefore found no material issue of fact outstanding and granted Farmers' motion for summary judgment.

There is only one issue in this case: whether the trial court properly granted Farmers' motion for summary judgment.[1] The standard for granting a motion for summary judgment is stated in I.R.C.P. 56(c). The court must grant judgment to the moving party

> "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

In determining whether there were unresolved material issues of fact the trial court had three documents before it: Farmers' complaint, and the affidavits of Sessions and McIntosh.

The complaint, in count V, states that Sessions committed an assault upon McIntosh "by throwing a barstool at him; that the defendant Sessions wilfully and intentionally threw the barstool *at defendant McIntosh*, intending thereby to injure him . . . .." (Emphasis added.) Sessions' affidavit, dated August 14, 1978, reads as follows:

> "Michael B. Sessions, being first duly sworn, deposes and says:
>
> I am one of the defendants in the above-entitled action.
>
> On March 12, 1976, I, along with some friends, was a patron of the Outlaw Inn in Twin Falls, Idaho. During the course of the evening, problems developed over the dinner service provided by the Outlaw Inn. A verbal confrontation took place between myself and the manager of the Outlaw Inn. As we were leaving the premises, the manager made an abusive gesture in the presence of my wife. As I

walked by the bar I pushed a tray of glasses at him and then picked up a bar stool, threw it at him and left. I fully intended to throw the bar stool at him and it was no accident.

> I later pleaded guilty to the assault and battery and paid a fine and made restitution for the damages I caused to the premises of the Outlaw Inn.
>
> <u>/s/   Michael B. Sessions"</u>

McIntosh's affidavit dated August 23, 1978 states:

> "GEOFFREY McINTOSH, after being duly sworn upon oath, deposes and says as follows:
>
> 1. That he is one of the Defendants in the above entitled case; and Plaintiff in Case no. 28900, entitled Geoffrey McIntosh v. Michael Sessions.
>
> 2. That on March 12, 1976, he was injured by the negligent, wanton, and reckless conduct of Defendant, Michael B. Sessions.
>
> 3. That he has read the Affidavit of Michael B. Sessions filed in Case No. 29958 and dated the 14th day of August, 1978, and concurs with the statements therein only as follows:
>
> (a) On said date Michael Sessions was a patron of the Outlaw Inn.
>
> (b) Problems developed over the service provided by the Outlaw Inn.
>
> (c) A verbal confrontation took place between Michael Sessions and the Assistant Manager of the Outlaw Inn.
>
> (d) Michael Sessions did knock off some glasses and then threw a bar stool in the direction of the Assistant Manager.
>
> 4. That he was an employee of the Outlaw Inn on said date but was neither the Manager nor the Assistant Manager of the Outlaw Inn; that he has never spoken to or with Michael Sessions nor had a 'verbal confrontation' with him; neither is he the person who made the alleged abusive gesture.

---

1. At the time this action was filed, McIntosh had not recovered a judgment against Sessions, and considerable question must therefore have existed whether an actual controversy existed between McIntosh and Farmers. Because Sessions had been discharged in bankruptcy he may also not have had an actual controversy with Farmers. We address the merits of the case because the parties indicated at oral argument that during the pendency of the case McIntosh had recovered a judgment against Sessions.

5. That the Assistant Manager of the Outlaw Inn on said date was Alan Nelson.

6. The Manager of the Outlaw Inn on said date was Mark Phillips.

/s/ Geoffrey McIntosh
GEOFFREY McINTOSH"

It is thus alleged and admitted that Sessions acted intentionally toward someone, although it is not clear toward whom his actions were directed. The determination of whether this "genuine issue" of fact is also "material," I.R.C.P. 56(c), requires an interpretation of law. The trial court apparently believed that any intentional act relieved the insurance company of liability. If we accept the trial court's view of the law, because it is uncontradicted that Sessions' act was intentional, it clearly was correct to grant Farmers' motion for summary judgment.

Appellants, however, argue that insurance policies must be strictly construed against the insurer, and that other courts have construed exclusionary language such as that involved in this case to require more than an intentional act. What is required for the exclusionary clause to operate, say appellants, is that the insured must have intended not only to *act*, but also to *injure*. That is, it is insufficient to bring the exclusionary provision into operation if admitting there was an intentional act, the injury itself was not intentional but was merely negligent or an inadvertent result of the original intentional act. Thus if Sessions acted intentionally toward another person and secondarily injured McIntosh, or if he intended only to throw the barstool and the glasses at, but not specifically to injure McIntosh, the insurance company remains liable under the terms of the policy. Under this view of the law the unresolved questions of precisely what Sessions intended, and toward whom he intended it, become material, and granting the motion for summary judgment would be improper.

A number of other courts have addressed this question. In doing so, however, most were interpreting exclusionary language exempting the insurance company from liability for injury caused "intentionally" by the insured. Because the exclusion in the instant case refers to "injury . . . caused *willfully*, intentionally, or *maliciously* by . . . the insured" (emphasis added), the respondent argues that the exclusion is broader than those exclusions which use only the term "intentional." The term "willful" is not significantly different from "intentional"; and the term "malicious" presumes intention, adding an element of wrongfulness. Thus, to claim an exclusion based on malicious conduct would apparently require a *stronger* showing than one based on only intentional conduct. But the issue in this case is not so much how we denominate the conduct required, whether intentional or otherwise, but whether, for the policy exclusion to operate, the malicious, intentional or willful act must have been performed for the purpose of causing injury. Thus we inquire whether the insurance company need only show a willful, intentional or malicious act; or whether they must show a willfully, intentionally or maliciously caused *injury*. The addition of the words, "willfully" and "maliciously" does not materially alter this inquiry.

The language of this exclusion is certainly "ambiguous," in that it lends itself to at least three possible interpretations. We must resolve any doubt in favor of the insured, strictly construing the contract against the drafter. *Abbie Uriguen Olds., Buick, Inc., v. United States Fire Ins. Co.,* 95 Idaho 501, 511 P.2d 783 (1973); *Stephens v. New Hampshire Ins. Co.,* 92 Idaho 537, 447 P.2d 14 (1968). The three possible interpretations were explained as follows, by a court considering a policy exclusion which used the term "intentional":

"(1) Intentional refers to the volitional act which produces injury. If the insured intentionally did the act, the resulting injury is intentional and not accidental for purposes regarding the policy.

(2) Intentional refers to the result achieved. Only where the insured intended to inflict the precise injury or degree of injury which in fact resulted should the injury be considered as not accidental.

(3) Intentional is more demanding than (1) but not so difficult of proof as (2). It refers instead to the volitional performance of an act with an intent to cause injury, although not necessarily the precise injury or severity of damage that in fact occurs." *Home Ins. Co. v. Neilsen,* 165 Ind.App. 445, 332 N.E.2d 240, 242 (1975).

We reject the first interpretation, above, offered by respondents and apparently accepted by the trial court, which requires nothing more than an intentional act for the policy exclusion to operate. Such an interpretation would radically alter the scope of insurance company liability. On an exclusion such as this one, the company would have no liability for the baseball intentionally thrown which accidentally breaks the neighbor's window, the intentional lane change which forces another driver into the ditch, or the intentionally started trash fire which spreads to the adjacent lot. Countless other examples are imaginable, in all of which an insurance company could rely on such an exclusion to avoid liability because the course of conduct of the insured involved intentional acts. See *Phoenix Ins. Co. v. Helton,* 298 So.2d 177, 180–81 (Fla.App.1974).

Besides, the very language of the exclusion at issue in this case prevents us from adopting such a position. The exclusion is phrased in two sections, addressing first, injury caused by the insured, and second, injury caused by others for which the insured is held legally liable. The first section refers to "injury . . . caused willfully, intentionally or maliciously by or at the direction of the insured . . .." The second refers to the "willful, intentional or malicious *acts* of any other person." (Emphasis added.) The policy's coverage is thus phrased in different, broader language for the insured's own acts, and requires willfully, intentionally or maliciously caused *injury,* rather than mere action.

In *Cincinnati Ins. Co. v. Mosley,* 41 Ohio App.2d 113, 322 N.E.2d 693 (1974), the court dealt with a policy which excluded coverage for "[b]odily injury . . . caused inten-

tionally by . . . the insured." The court found coverage where the insured aimed her car at one person and accidentally struck another. The court stated that to have avoided coverage in such a situation it would require language of exclusion reading "[b]odily injury caused by the *intentional acts* of the insured." (Emphasis in the original.) 322 N.E.2d at 696. Other courts have noted this distinction. *Smith v. Moran,* 61 Ill.App.2d 157, 209 N.E.2d 18, 19 (1965). Such language of exclusion for mere intentional acts was provided in the exclusion in this case, but not with respect to conduct of the insured. We will not read such language in where it has apparently been purposefully omitted.

Numerous cases construing exclusions similar to the one in the instant case have held them inapplicable where the act is directed toward injuring one person, but injury actually results to another person, or where the injury is the unintended result of an intentional or malicious or willful act.

In *Smith v. Moran, supra,* for example, the insured fired a gun intending to strike one person, and instead struck another. The liability policy excluded from coverage damages for "injury . . . caused intentionally by or at the direction of the Insured." Nothing the "distinction between an intentional act and an intentionally caused injury," 209 N.E.2d at 20–21, the court held that the exclusion did not relieve the company of liability because the insured had not intended to injure the plaintiff. *See also, Phoenix Ins. Co. v. Helton, supra* (car driven into crowd to disperse it, accidentally injures person, insurance company held liable on similar exclusion); *Cincinnati Ins. Co. v. Mosley, supra,* (woman drives car at one person, accidentally hits another, insurance company held liable despite similar exclusion).

Other cases turn on whether the physical injury was intended, despite the fact that the insured clearly acted toward the person in whom the injury resulted. In *Pachuki v. Republic Ins. Co.,* 278 N.W.2d 898 (Wis. 1979), the insureds engaged in a "greening pin war" with a fellow employee. During

this activity, which was apparently the equivalent of using a rubber band to propel paper clips, the plaintiff suffered an eye injury. Despite the fact that the natural and probable consequence of such activity was physical injury, the court held that the evidence established that the insured did not actually *intend* physical injury. It therefore held the insurance company liable, despite language of exclusion which discharged its liability for injury "expected or intended from the standpoint of the insured." In *Unigard Mut. Ins. Co. v. Argonaut Ins. Co.,* 20 Wash.App. 261, 579 P.2d 1015 (1978), the insured's eleven year old child broke into a school and started a fire in a trash can which resulted in $250,000 damage to the school. Because there was evidence that the child actually intended to injure the school, the court, in the face of similar exclusionary language, absolved the insurance company from liability under its coverage of the child. It found coverage, however, for his parents, who had been, at most, negligent. In *Putnam v. Zeluff,* 372 Mich. 553, 127 N.W.2d 374 (1964), the insured boy was camping, heard barking dogs nearby, and shot one of them out of fear for his safety. The dog was a prize coonhound, worth some $1,000. Since the trier of fact had found that the boy did not intend to destroy the dog, but only to stop its advance, the exclusion for injury "caused intentionally by or at the direction of the insured" was held inapplicable and coverage under the policy was extended. *See also Nielsen v. St. Paul Co.'s,* 283 Or. 277, 583 P.2d 545 (Ore.1978); *Lockhart v. Allstate Ins. Co.,* 119 Ariz. 150, 579 P.2d 1120 (1978); *Morrill v. Gallagher,* 370 Mich. 578, 122 N.W.2d 687 (Mich.1963); *Cowan v. Ins. Co. of North America,* 22 Ill.App.3d 883, 318 N.E.2d 315 (1974); *Baldinger v. Consolidated Mut. Ins. Co.,* 11 N.Y.2d 1026, 230 N.Y. S.2d 25, 183 N.E.2d 908 (N.Y.1962); *Annot.,* 2 A.L.R.3d 1238.

We follow the great weight of authority and hold that for this "intentional tort" exclusion to operate the insurance company must be able to show that its insured acted (whether willfully, intentionally or maliciously) for the purpose of causing injury in the person or property in which it resulted. So long as an injury was intended, willed, or maliciously sought, it is immaterial that an injury of a different nature from that actually contemplated in fact resulted. *Lockhart v. Allstate Ins. Co., supra* 579 P.2d at 1123.

Accordingly, we reverse the order granting the motion for summary judgment and remand for a factual determination to resolve the unanswered questions of whether Sessions actions were of such a character as to relieve Farmers Insurance Group of liability for them.

DONALDSON, C. J., BAKES and BISTLINE, JJ., and DUNLAP, J. Pro Tem., concur.