695 P.2d 346

**COUNTRY INSURANCE COMPANY, Plaintiff-Appellant,**

v.

**AGRICULTURAL DEVELOPMENT, INC., an Idaho corporation, Defendant-Respondent.**

**No. 15296.**

Supreme Court of Idaho.

Nov. 30, 1984.

Rehearing Denied Feb. 20, 1985.

---

**4.** Section 900, Revenue Act of 1924, tit. 9, c. 234, 43 Stat. 253, 336 (26 U.S.C. § 1211, note, *et seq.*).

**962**

Michael G. Brady of Brady, McDaniels & Mathews, Boise, for plaintiff-appellant.

John J. Healzer of Hart & Healzer, Jerome, for defendant-respondent.

BISTLINE, Justice.

## I.

Country Insurance Company, in its statement of issues presented raises the sole contention that the trial court committed prejudicial error in revising a special verdict after the jury instruction conference where the trial court did not thereafter give counsel an opportunity to read and consider said revision and register objections thereto. The giving of the revised special verdict is not itself assigned as error.

The main theme of the appeal is set forth in Country Insurance's brief as follows:

*Archer* and *Taylor* [1] can be distinguished from this case in a number of ways:

(1) In *Archer* and *Taylor*, I.R.C.P. 51 provided in part:

"At the close of the evidence or at such time as the court reasonably directs or permits, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall rule upon said requests, and may also prepare other written instructions to be given of its own motion, and shall submit to the parties the instructions that will be given, and provide opportunity to make objections. *The failure to object to any instruction given by the court shall not preclude any party to the action from assigning as error on appeal any erroneous instruction given, not requested by such party, or any omission by the court to give a proper instruction ....*" (Emphasis added.)

I.R.C.P. 51 was subsequently amended in 1975, wherein the prior provision: "The failure to object to any instruction given by the Court shall not preclude any party to the action from assigning as error on appeal any erroneous instruction given or any omission by the court to give the proper instruction," was stricken and a mandatory requirement was added that counsel must object to the instructions that will be given by the Court and the failure to make an objection on the record precludes raising the issue on appeal.

In *Briscoe v. Nishitani*, 105 Idaho 175, 667 P.2d 278 (Ct.App.1983), the Idaho Court of Appeals stated:

"Preliminarily, we note that objections to giving, or failing to give, jury

---

**1.** *Archer v. Shields Lumber Co.,* 91 Idaho 861, 434 P.2d 79 (1967); *Taylor v. Herbold,* 94 Idaho

133, 483 P.2d 664 (1971).

instructions, and the court's ruling thereon at the close of evidence at the trial, must be made a part of the record. I.R.C.P. 51(a)(1). Failure to make an objection on the record precludes raising the issue on appeal. *Quincy v. Joint School District No. 41, Benewah County,* 102 Idaho 764, 640 P.2d 304 (1981). *Stoddard v. Nelson,* 99 Idaho 293, 581 P.2d 339 (1978)."

Accordingly, in *Archer* and *Taylor,* the prejudicial effect of the failure to submit instructions to the parties for review and objections prior to instructing the jury, was cured by the language in the then Rule 51 which provided that the "failure to object to any instruction given by the court shall not preclude any party to the action from assigning as error on appeal any erroneous instruction given."

Therefore, prior to 1975, the failure to provide instructions to counsel, and the corresponding failure of counsel to object to the instructions to be given, did not prejudice counsel from raising the issue of erroneous or improper instructions on appeal.

However, subsequent to 1975, the failure to object to instructions given by the trial court, prior to instructing the jury, precludes raising the issue on appeal. The trial court altered and revised the original Special Verdict without the knowledge, participation or consent of counsel, and gave the altered Special Verdict to the Jury without giving counsel an opportunity to review or object to the altered Special Verdict. Technically, no objection having been made on the record thereto, Country Insurance is now precluded on appeal from raising any issue regarding the altered Special Verdict, to its extreme prejudice.

2. The mandatory language of this amendment referred to in the excerpt above-quoted is:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

Appellant's Brief, pp. 16–18.

As pointed out above, Country Insurance, believing that it was precluded, has not assigned as an issue on appeal that there was prejudicial error other than in not displaying the revised version to counsel in order that objection could be made. Unfortunately, however, Country Insurance is in error on its underlying declaration that such preclusion has been the rule at all times subsequent to 1975. Correctly picking up on the change in the rule as it had existed at the time of *Archer* and *Taylor* by an amendment made effective January 1, 1975,[2] Country Insurance then fails to observe the further amendment made by order dated July 2, 1976, effective October 1, 1976. That 1976 amendment completely removed the sentence which is set out in footnote 2. A further amendment made to the rule on May 25, 1977, with an effective date of July 1, 1977, did not reinstate the language deleted by the 1976 amendment, but only continued the requirement of instruction conferences, and changed the existing last sentence of I.R.C.P. 51(a) to read that "All objections thereto, and any objections to the giving or the failure to give an instruction, and any court's ruling thereon, must be made a part of the record." Insofar as the argument here is concerned, the rule for almost eight years has not required the making of objections as a condition precedent to assigning error.

■ As noted in the above excerpt from its brief, Country Insurance in this Court relies heavily on a Court of Appeals case[3] ·¹ preference to a more close reading of Rule 51(a). The statement in that case, that "Failure to make an objection on the record precludes raising the issue on appeal," was thought by the Court of Appeals to be supported by *Quincy, supra,* and

3. *Briscoe, supra,* was released July 28, 1983, and the remittitur sent down to the Canyon County District Court on August 19, 1983. The jury verdict in this case was rendered August 4, 1983. During argument on a motion for judgment N.O.V., and a motion for a new trial on September 26, 1983, *Briscoe* was not mentioned, suggesting that counsel had not then become aware of it.

*Stoddard, supra.* In *Quincy,* there was no question about some general instructions which the trial judge gave in accordance with his custom of giving some general instructions in advance of opening statements. The judge offered an opportunity to object to the intended procedure, but no objection was made; the appellant in that case did not request time to review the instructions. The appellant having acquiesced at a time when he could have done otherwise, the holding of this Court was, not that he could not challenge such instructions on appeal, but that he could not challenge that procedure as error on appeal. In a similar situation, although a criminal case, we stated in *State v. Watson,* 99 Idaho 694, 701, 587 P.2d 835, 842 (1978): "Where a trial court inadvertently or even purposefully imposes on either party or both a variation in procedure, there yet remains an obligation to make a timely objection." [4] The Court of Appeals also cited *Stoddard, supra,* as support for its statement in *Briscoe.* In stating that the appellants in *Stoddard* were precluded from raising on appeal any issue of alleged error in the instructions, this Court, by footnotes 1 and 4 and in the text itself, made it clear that the rule *as then applicable* required the making of objections in the trial court in order to preserve the question for appellate rule. Accordingly, the statement in *Briscoe* was erroneous, and will henceforth be disregarded.

4. In *Watson,* the trial court on reconvening following recess taken after defense rested immediately commenced instructing the jury without complying with Idaho Criminal Rule 30. In holding that there was no error, we further observed that "When the trial court inadvertently embarks upon an improper procedure, it is the responsibility of counsel to object or otherwise call it to the trial court's attention *while there is still the opportunity to cure the defect."* 99 Idaho at 701, 587 P.2d at 842 (emphasis original). It is important to note that I.C.R. 30 has been amended since *Watson.*

5. SECTION 6.6 AVOIDING CLAIMS FOR VARIANCE

§ 6.6(a) RESERVATION–OF–RIGHTS NOTICES AND NONWAIVER AGREEMENTS

II.

For reasons which hereinafter appear, we believe that it is in the interests of judicial administration to set forth the history of this litigation. The action was commenced by Country Insurance seeking a declaratory judgment against its policyholder, Agricultural Development, Inc., that it owed to the latter neither an obligation to defend an action then pending against Agricultural Development brought by Robert Nichols et ux nor to indemnify Agricultural Development for any judgment which might be rendered against it in the Nichols action. The Nichols action was filed in May of 1980, based on allegations that Agricultural Development's installations of irrigation systems were defectively installed, allegations of liability being founded on breaches of express and implied warranties, breach of contract, negligence, and fraud. Country Insurance undertook Agricultural Development's defense of the Nichols' lawsuit, with a reservation of rights,[5] and, as we were informed at oral argument, continues to provide that defense. Counsel retained by Country Insurance to represent Agricultural Development are not counsel who represent Country Insurance in this action, which was brought fourteen months after the commencement of the Nichols lawsuit. At oral argument the only explanation offered to the enigmatic situation of Country Insurance bringing the declaratory action against its policyholder was that the Nichols action "wasn't going anywhere"—

It often happens that an insurer attempts to defeat a claim of rights at variance with policy provisions by relying upon a reservation-of-rights notice or a nonwaiver agreement. The former is a unilateral declaration by the insurer, delivered to the insured or other potential claimant, or both, stating in effect that the insurer reserves its rights to contest liability and that its conduct in investigating the claim or taking other action in relation to it is not to be construed otherwise. A nonwaiver agreement is a similar declaration in the form of a contractual agreement between the insurer and the insured or other potential claimant.

Keeton, Robert E., *Insurance Law,* 1971 (West Publishing Co.).

meaning to us that it was progressing so slowly that Country Insurance, notwithstanding its reservation of rights, made the decision to seek an adjudication that it owed no obligation to Agricultural Development.

Paragraph VII of Country Insurance's complaint alleged that on being notified of the Nichols action it advised Agricultural Development of the probability that there would be no coverage because of certain stated policy exclusions, and that it thereafter assumed the defense of the Nichols action, reserving its rights to deny coverage notwithstanding the assumption of such defense.

The prayer of Country Insurance's defense was:

1. That the Court determine and adjudicate the liability of Plaintiff to pay any judgment claimed by William K. Nichols and Ethel L. Nichols, husband and wife, and Robert O. Nichols and Karen L. Nichols, husband and wife, in any pending or further action arising out of the transactions or occurrences described in the Complaint attached hereto as Exhibit "C";

2. That the Court declare that Plaintiff is under no obligation to expend money in defending any actions which have been brought or which may be brought against Defendant arising out of the transactions or occurrences alleged in the Complaint attached hereto as Exhibit "C", and is under no obligation to assist in any defense of any litigation arising therefrom, and is not required to make any settlement because of the alleged transactions or occurrences, or pay any judgment, which may be recovered as a result thereof against Defendant; and

3. That the Court grant such other relief as the Court deems just and proper.

R., p. 7.

After an answer was filed by Agricultural Development, Country Insurance moved for summary judgment in its favor. The trial court, on reviewing the policy of insurance and the Nichols' complaint, both of which were attached to Country Insurance's complaint, ruled as a matter of law that some damages sought in that untried action were not subject to indemnification under the policy, but ruled that there were genuine issues of material fact as to policy coverage, one of which was the Nichols' claim of $550,000 for loss of crops allegedly caused because there was no irrigation system to water them.

The only witnesses who testified at the trial as Agricultural Development witnesses were Bob Nichols and William Nichols, the plaintiffs in the Nichols suit, and Jeff Sherburne; the only person testifying as witness called by Country Insurance was Larry Sherburne. Both Jeff and Larry Sherburne were also named defendants in the Nichols action brought against Agricultural Development; Larry Sherburne was identified as an officer in Agricultural Development. Jeff Sherburne had been an employee of Agricultural Development at times pertinent to the Nichols action, and his responsibility, as pertinent, included designing the involved sprinkling system.

The entire lengthy examination of these witnesses was centered around proving or disproving the negligence allegations of the Nichols complaint. The trial court, by Given Instruction No. 10, informed the jury on the meaning of negligence:

When I use the word "negligence" in these instructions, I mean the failure to use ordinary care in the management of one's property or person. The words "ordinary care" means the the care a reasonably careful person would use under circumstances similar to those shown by the evidence. Negligence may thus consist of the failure to do something which a reasonably careful person would do under circumstances similar to those shown by the evidence.

Given Instruction No. 11 advised the jury on the law of proximate cause:

When I use the expression "proximate case," I mean a cause which, in natural or probable sequence, produced the damage complained of. It need not be the only cause. It is sufficient if it concurs

with some other cause acting at the same time, which in combination with it causes damage.

In Given Instruction No. 9 the court made it encumbent upon the jury to make a finding as to Agricultural Development's negligence and whether the defective condition of the irrigation system was an occurrence which proximately caused the Nichols' crop damage:

You are to find that the policy of insurance did cover the crop loss suffered by the Nichols if and only if, assuming liability to Nichols, defendant proves all of the following:

1. The irrigation system built by defendant was defective due to said defendant's negligence or poor workmanship;

2. That the above defective condition caused or was an "occurrence" as defined in these instruction; and

3. That the crop damage was proximately caused by said occurrence, as opposed to some other fault of defendant.

Even if all these propositions have been proved by defendant, you should find that the crop damage is not covered if plaintiff proves that, at the time of the occurrence, the systems were not complete enough to irrigate the Nichols' land even if they were not defective due to defendant's negligence or poor workmanship.

You may find coverage for crops lost on one of the Nichols farms and not on the other, or coverage on some but not all of the crops.

A part of Given Instruction No. 8 explained to the jury the pendency of the Nichols action and told the jury that its function was to decide if Country Insurance's policy issued to Agricultural Development insured the latter against any liability to the Nichols that might be assessed in the later trial. As mentioned earlier in Part I, no challenge has been raised on the appeal as to the giving of any of these instructions. A verdict form was also submitted to the jury which contained six questions, all of which called for yes or no answers. At the time of the instructions conference there was no arabic number prefixed to the sixth question. Prior to reading the form of the verdict to the jury the court numbered it "6." In reading the instructions, the court simply mentioned it as "the last question" instead of reading the number "6." The verdict form which went to the jury room read in full as follows:

### INSTRUCTION NO. 22

We, the jury, answer the questions submitted to us in the special verdict as follows:

Question No. 1. Was the irrigation system built by defendant defective due to said defendant's negligence or poor workmanship?

W. K. Nichols' farm     Answer: Yes____ No____
Bob Nichols' farm     Answer: Yes____ No____

Question No. 2. Was there an occurrence as defined under the Country Insurance Company policy?

W. K. Nichols' farm     Answer: Yes____ No____
Bob Nichols' farm     Answer: Yes____ No____

Question No. 3. Was the crop damage proximately caused by said occurrence, as opposed to some other fault of defendant?

W. K. Nichols' farm     Answer: Yes____ No____
Bob Nichols' farm     Answer: Yes____ No____

If, and only if, you have answered yes at least in part to all three questions above, please answer the following questions:

Question No. 4: At the time of the occurrence were the systems complete enough to irrigate the crops had they not been defective?

W. K. Nichols' farm     Answer: Yes____ No____
Bob Nichols' farm     Answer: Yes____ No____

Question No. 5: Does exclusion (m) in the policy apply?

To W. K. Nichols' farm    Answer: Yes____ No____
To Bob Nichols' farm    Answer: Yes____ No____

Question No. 6: Does the Country Insurance Company policy provide coverage for Agricultural Development for the Nichols' crop losses in:

1. The W. K. Nichols' farm     Yes____ No____
2. The Bob Nichols' farm     Yes____ No____

When the jury first returned a verdict the answer to the final question (No. 6) was "yes, yes," but the answer to the first question was "no, no." Because of the inconsistency, the court reread Given Instruction Nos. 8 and 9, and sent the jury out again. After requesting and receiving a clarifying instruction, all questions were answered "yes" and a judgment was entered which was "in favor of defendant, Agricultural Development, Inc., relative to the Nichols $550,000 crop damage claim against Agricultural Development, Inc." R., p. 176.

Country Insurance moved for judgment n.o.v. "on the grounds and for the reasons that the facts and the law of the case require that the Special Verdict be set aside, and the original Special Verdict entered by the Jury be reinstated, and that the Judgment thereafter entered thereon be vacated or reversed." R., p. 177. Alternatively, it moved for a new trial on the grounds and for the reasons of insufficiency of the evidence to justify the verdict, and for error in law in revising the special verdict form without advising counsel and then submitting it to the jury. At the hearing on the motions the main complaint of Country Insurance was that the jury had originally answered the last question, 6, when, under the language of the verdict form it was not required to answer that question or any question beyond No. 3, if any answers to the first three question were "no." As counsel for Country Insurance stated it: "The original instruction was set up in such fashion that if the jury answered any of the special interrogatories in the negative, they need not have answered any further insofar as the additional questions 4 and 5." Tr., Vol. 3, p. 4. In argument on its motions, Country Insurance argued the ramifications of Rule 49(b):[6]

Basically, your Honor, we've got Rule 49(b), Idaho Rules of Civil Procedure, which deals with general verdicts and special interrogatories when they're molded into one form.

I think the provision of that rule that we're concerned with here provides that when the answers are inconsistent with each other, one or more is inconsistent with the general verdict, the court may direct the entry of the verdict in accordance with the answers, notwithstanding the general verdict, or may return the verdict for further consideration of other answers in the verdict, or it may order a new trial.

Basically Rule 49 gives the court three options, 49(b) gives three options, whenever a special verdict form is inconsistent with the general verdict form.

Basically the way the original instruction was drafted and reviewed with counsel, there were three specific questions posed to the jury, 1, 2 and 3, and if the jury answered any of those in the negative, the original instruction advised the jury to go no further.

Well, it's our position, your Honor, that the original instruction as given by the court, and the original jury verdict form, were specific enough that when the jury did enter specific findings, specifically with regard to question number

---

6. I.R.C.P. 49(b) provides:

**General verdict accompanied by answer to interrogatories.—** The court may submit to the jury, together with appropriate forms for a general verdict, written interrogatories upon one or more issues of fact the decision of which is necessary to a verdict. The court shall give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court shall direct the jury both to make written answers and to render a general verdict. When the general verdict and the answers are harmonious, the court shall direct the entry of the appropriate judgment upon the verdict and answers. When the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may direct the entry of judgment in accordance with the answers, notwithstanding the general verdict or may return the jury for further consideration of its answers and verdict or may order a new trial. When the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, the court shall not direct the entry of judgment but may return the jury for further consideration of its answers and verdict or may order a new trial.

1, the court should have disregarded the general verdict, which was whether or not there was coverage, and went with the specific findings of the jury based upon their consideration of the evidence, and entered a judgment in accordance with the answers, notwithstanding the general verdict that had been entered by the court erroneously.

We've cited the general rule in Idaho where there are inconsistencies between a special finding and the general verdict, judgment in accordance with the special finding is proper; this basically goes along with the more modern rule, 49(b) of the Idaho Rules of Civil Procedure, and so what we're indicating now, as far as what the jury did and originally brought in, the court has the power to either enter a judgment notwithstanding the general verdict, or grant a new trial, which is what we're requesting the court to do in this regard.

Tr., Vol. 3, pp. 5–7.

I think that the court should review the evidence in the case, and basically reinstate the original special verdict form entered by the jury, which basically would result in a judgment for the—or verdict for the plaintiff in this case.

Tr., Vol. 3, p. 8.

It's our contention here, your Honor, that there was a material, substantial variation between Instruction Number 22 reviewed by counsel and ultimately revised by the court and given to the jury and, in fact, the revision created the inconsistency between the specific findings of the jury and the general verdict. We had no opportunity to review the variation in the special verdict form, or to object to the same prior to the time it was given to the jury.

Tr., Vol. 3, p. 12.

The trial court, in response to the contentions of Country Insurance, advised counsel that it had been "the intention of the court, all along, to give the instruction in that way" (with the last paragraph being given a number), but because of time con-

straints the changes in the verdict form were made in ink at the last minute, and concededly without affording counsel "any opportunity to object on the record." The court made it clear, however, that any objection would not have been sustained:

The court does not feel that the instruction given is error; far from it—the court feels it was necessary in order to prevent the jury from misunderstanding the issues involved. It was a very complicated case. *I know both counsel expressed that they never had a jury trial before on the issue of coverage, wherein the principal case had not been decided by the jury before.*

Tr., Vol. 3, p. 14–15 (emphasis added).[7]

Following which the court added that Country Insurance was entitled to the ruling being made, i.e., that there had been a failure to display the revised verdict form to counsel in order to allow opportunity to object, so that Country Insurance would not be penalized—but would be entitled to ascertain from the Supreme Court a ruling as to whether the modified verdict form was erroneous. Tr., Vol. 3, p. 17.

In appealing from the final judgment, Country Insurance also stated that it was appealing from the trial court's denial of the motion for judgment n.o.v., and, alternatively, for a new trial.

### III.

As has been noted, however, the only issue raised on appeal is the procedural error in the trial court's revision of the verdict form. Notwithstanding that the trial court later made a ruling obviously designed to afford Country Insurance the right to argue error in giving the special verdict instruction, as revised, to the jury, Country Insurance has *not* assigned any error in that respect. As stated in the first sentence of this opinion, the only error assigned is the procedural deviation from Rule 51(a).

In the argument portion of its brief, and at oral argument, Country Insurance

---

**7.** Underlining supplied for reasons which will appear, *infra.*

urges—beyond the scope of its stated single issue—that the revised verdict form was material and substantial error, in that being unaware of the revision it was unable to argue effectively. Cases relied upon are *Delano v. Kitch,* 542 F.2d 550 (10th Cir.1976); *Forsythe v. City of Thief River Falls,* 296 Minn. 337, 208 N.W.2d 756 (1973); *Fraser v. Choiniere,* 133 Vt. 631, 350 A.2d 755 (1975); and *Moredock v. McMurray,* 527 S.W.2d 462 (Tenn.1975). In *Delano* the federal court of appeals held reversible error in not properly instructing on the fiduciary duties of a director or officer under Kansas law. 542 F.2d at 554. Finding reversible error where the district court gave instructions so substantially different from those which the court had indicated to counsel would be given that counsel were by reason thereof unable to argue the case intelligently, *id.* at 555, that court also noted that: "It is obvious that minor variations between the instructions given the jury and those discussed with counsel cannot be complained of . . . ." *Id.* at 555.

In *Forsythe* the context on appeal was somewhat different. There the trial court had granted a new trial because of the court's conceded error in not *unequivocally* informing counsel of its intention to instruct the jury on superseding cause. Plaintiff voiced an objection to the giving of such an instruction—and the court delayed ruling thereon, adding that counsel would be advised the next morning if it was not to be given. Neither court nor counsel again raised the subject, and both counsel argued the case to the jury without alluding to the issue of superseding cause. The Minnesota Supreme Court upheld the award of a new trial, declaring that it would defer to the trial court's appraisal that it had committed prejudicial error. At the same time the Minnesota Supreme Court specifically held that noncompliance with its Rule 51 amounts to reversible error only if the omission is prejudicial. 208 N.W.2d at 758. It agreed with the trial court that superseding cause was a difficult concept for a jury to understand and

apply without guidance from argument of counsel.

The Vermont court in *Fraser* also noted that a purpose of the rule is so that counsel "can argue the facts in the light of the law contained in the instructions to be given." 350 A.2d at 757. The Tennessee court in *Moredock,* noting that failure to comply with the rule in every case would not always be reversible error, also saw as an important consideration, "above all, the existence of a bona fide and particularized need for the guidance of counsel in advance of argument." 527 S.W.2d at 463.

Putting aside that Country Insurance did not present to the trial court any claim that it was prejudiced in arguing to the jury, our examination of that contention made in this Court does not persuade us of any error. Moreover, as in the *Forsythe* case, the trial court here was requested to award a new trial or a judgment n.o.v.—but did not do so for reasons which are set forth, *supra.* We also note that Country Insurance does not suggest how it would have argued the case to the jury any differently had it known that the final question on the verdict form had been numbered "6," and that the word "following" had been changed to "next 2." The record brought to us by Country Insurance does not contain the final summation of counsel to the jury. We assume that counsel for Country Insurance made it abundantly clear to the jury, as Instruction No. 22 provided, that they had no concern beyond the first three questions "if, and only if" they answered yes in part to any of those first three. Notwithstanding the clearly worded directions, with or without our surmise of urging by counsel, the jury did as juries sometimes do, and answered the final question, by the trial court numbered "6." We are completely at a loss to understand the contention that the numbering of that final question—which the parties all seem to understand constituted a general verdict[8]—was in any way attributable to

---

8. As noted, *supra,* the prayer of the complaint was for an adjudication that Country Insurance

was not obligated under its policy, i.e., that there was no coverage extended to Agricultural

the fact that it was not left unnumbered. That the jurors answered No. 6 suggests only that they somehow, perhaps from unreported argument of counsel, understood that was what the case was all about. Be that as it may, Country Insurance does not illustrate in the least how it was prejudiced in making final summation to the jury. Moreover, as noted, *supra*, in arguing the post-judgment motions, Country Insurance clearly demonstrated its view that Instruction No. 22, and in particular question No. 6, constituted a general verdict. That the trial court referred to the verdict form as a special verdict is not as controlling as is the substance of the verdict itself.[9] It has all of the characteristics of a general verdict with interrogatories. Country Insurance so referred to it arguing those motions, and, pointing to the inconsistencies between the general verdict and the numbered questions, urged upon the court the granting of a new trial, or a judgment n.o.v. in favor of Country Insurance on the basis of the insufficiency of the evidence. This was all argument after-the-fact, i.e., after the court had immediately perceived the inconsistency of the verdict and had returned the jury to further deliberations aimed at arriving at a verdict not inconsistent. Rule 49(b), relied upon by Country Insurance, provides that when an answer (one or more) is inconsistent with the general verdict, the court may direct judgment in accordance with the answers, notwithstanding the general verdict, or may return the jury for further consideration of its answers and verdicts, or may order a new trial. Here the trial court acted promptly on observing the inconsistency, and returned the jury—all without any objection by Country Insurance. Nor did Country Insurance voice any objection to Instruction No. 23 given to the jury responsive to a jury inquiry made to the court after the jury had been returned when the court refused to accept the inconsistent verdict.

That instruction appears to have been favorable to Country Insurance wherein it told the jury that it might find that Agricultural Development "breached a legal obligation not amounting to negligent or faulty workmanship. One example of this is a failure to perform a contractual obligation resulting in an unfinished product at the time of the alleged occurrence." This was not objected to, and, because we presume validity not error, and there being no indication to the contrary, we presume that this instruction was presented to counsel, for comment and possible objection, before it was given. No error is assigned suggesting to the contrary.

In sum, although Country Insurance was undoubtedly disappointed that the jury answered No. 6, and thereby created an inconsistency which resulted in its being returned for further deliberations—an option which the rule clearly vests within the court's discretion—which eventually resulted in a verdict for Agricultural Development rather than the judgment which might have been entered for Country Insurance had the jury not answered No. 6. Such disappointment, although understood and appreciated, does not rise to the status of error on the part of the trial court. The returning of the jury for further deliberations, as against an entire new trial, would not only seem to have been the best alternative for the court to follow, but was acquiesced by both parties. There was no prejudicial error, and we so hold.

### IV.

■ As intimated in colloquy between the bench and counsel at oral argument, the Court looks at the proceedings below with somewhat of a jaundiced eye. As noted in Part II, Country Insurance assumed the defense of the Nichols action against Agricultural Development. Four-

Development for the Nichols' crop losses. Question 6 submitted that issue to a jury. Such is in this case a general verdict.

9. Only Country Insurance requested the submission of a special verdict which the court marked

"Modified." The similarity of language in the instructions tends to explain why the verdict form prepared by the court was perhaps inadvertently designated a special verdict in Given Instruction No. 21.

teen months later, without the Nichols action having gone to judgment, Country Insurance brought this action against Agricultural Development, notwithstanding that it had retained counsel to represent Agricultural Development, thus placing Agricultural Development in the position of being sued by its own insurer which had elected to assume the defense and apparently made the choice of counsel who would present Agricultural Development's defense, which counsel presumably would be compensated by Country Insurance. The Nichols action was predicated on many theories, one of which was negligence of Agricultural Development in the construction and installation of the sprinkling systems.

Country Insurance, having assumed the defense with a reservation of rights based upon its initial evaluation of the situation, thereafter, some fourteen months later, and perhaps after learning more about the Nichols/Agricultural Development transaction leading to the Nichols action, then brought this declaratory action, the purpose of which was to establish its complete non-liability under the policy. In order to do that, Country Insurance litigated with its own insured, prior to the completion of the underlying Nichols action, the question which primarily was whether Agricultural Development's pending potential liability was factually grounded on its negligence or on breach of contract, as well-expressed in Given Instruction No. 23.[10]

As the trial judge was to note, after the trial was over and a consistent verdict reached and accepted, counsel representing Agricultural Development was placed on the horns of a dilemma; for his clients to prevail Agricultural Development had to establish that it was without fault (which would inure to the benefit of Country In-

surance) or that if they were liable, it was on a basis covered by its policy of insurance with Country Insurance. R., Vol. 3, p. 15, Proceedings on Post-Judgment Motions. The dilemma was solely attributable to Country Insurance's bringing of an action which, for the most part, was necessarily going to involve trying factual questions of negligence and proximate cause—not forgetting that Country Insurance had elected to assume the defense, and fourteen months elapsed. The conflict of interest is apparent, and that Country Insurance utilized one firm of attorneys to defend Agricultural Development and another firm of attorneys to sue Agricultural Development does not necessarily remove the conflict. A good discussion of this area of the law is Keeton on Insurance Law, West Publishing Co., 1971, beginning at ch. 7, p. 490, Conflicts of Interest Under Liability Insurance.

This Court thirty years ago was first required to interpret the declaratory judgment act in *Ennis v. Casey*, 72 Idaho 181, 238 P.2d 435 (1951). The issue tried in that case, as in this, was the plaintiff's claim that the defendant was negligent. In reversing the judgment which had been entered, this Court used language ideally suited to this action:

A statute worded the same as the above has been enacted by many of the states, also the United States Congress. No authority from any decision of the states, or the United States, has been called to our attention where the statute had been interpreted to include an adjudication of rights and liability which necessitated the determination of whether or not a tort or wrong had been committed, or to determine a liability due to breach of contract. . . .

. . . .

---

**10.** Given Instruction No. 23, discussed *supra*, reads in full:

In response to the jurors' question, you may answer question number one either yes or no. What I am saying is that you must not consider whether or not the Nichols' claims are true. You have to assume that defendants breached a legal obligation resulting in their owing the

Nichols money. You may find, however, that they breached a legal obligation not amounting to negligent or faulty workmanship. One example of this is a failure to perform a contractual obligation resulting in an unfinished product at the time of the alleged occurrence.
R., p. 171.

972

While it has been held that declaratory judgment proceedings may be maintained, although such proceedings involve the determination of a disputed question of fact, *Hamilton Corporation v. Corum*, 218 Cal. 92, 21 P.2d 413 [1933]; Sec. 10–1209, I.C., it cannot be used where the object of the proceedings is to try such fact as a determinative issue, 1 C.J.S., Actions, p. 1031, § 18, and a declaratory judgment should be refused where the questions presented should be the subject of judicial investigation in a regular action. *Heller v. Shapiro*, 208 Wis. 310, 242 N.W. 174, 87 A.L.R. 1201 [1932]; *Oldham County ex rel. Woolridge v. Arvin*, 244 Ky. 551, 51 S.W.2d 657 [1932].

In the case before us, plaintiff could have had determined in a regular suit the questions sought to be decided under the declaratory judgment statute. An action for a declaratory judgment may be maintained only for the purpose of determining and declaring fixed legal rights where it will accomplish some useful purpose. It cannot be invoked merely to try issues and determine questions which are uncertain and hypothetical. 1 C.J.S., Actions, § 18, p. 1023; *Ladner v. Siegel*, 294 Pa. 368, 144 A. 274 [1928].

*Ennis, supra,* 72 Idaho at 184–86, 238 P.2d at 437–38.

In *Nelson v. Whitesides*, 103 Idaho 374, 647 P.2d 1246 (1982), relying on *Ennis*, where a petition for a declaratory decree was sought within the confines of an existing action, we forewarned that the Declaratory Judgment Act is not a freeway open for the litigation of factual disputes:

We immediately gather from the passage in *Ennis* that had Mark Whitesides attempted an independent action against Nelson seeking to establish the limits of his statutory liability, *the trial court would have properly dismissed and relegated his inquiry to the regular suit already pending* in which the very same

questions might come up assuming, the underlying liability of Brett Whitesides, and assuming also a damage award over and above Brett's coverage.

*Nelson, supra,* at 377, 647 P.2d at 1249 (emphasis added).

Earlier, in *Farmers Insurance Group v. Sessions*, 100 Idaho 914, 607 P.2d 422 (1980), we stated that we addressed the merits in that case only because the parties advised us at oral argument that during the pendency of the declaratory judgment action on appeal the underlying case had gone to a judgment where the injured party had recovered from the insured, Mr. Sessions. This advice resulted from questioning from the bench which expressed concern that at the time that declaratory action was tried, the underlying action had not been decided, thus suggesting that it could have all been an exercise in futility, both at trial and in this Court, if the injured party were to not ultimately prevail against the insurer's insured. *See* 100 Idaho at 915, 607 P.2d at 423, n. 1.[11]

In *K.M.S. Research Laboratories, Inc. v. Willingham*, 629 S.W.2d 173 (Tex.App. 1982), the sole issue on appeal was whether K.M.S. could use the Uniform Declaratory Judgment Act to obtain a determination of non-liability to a defendant in a tort-feasor. The Texas court observing that there was little guidance from Texas cases, made its decision in reliance on federal cases and *Ennis v. Casey:*

The federal cases are unequivocal. While noting that refusing to enter a declaratory decree is discretionary with the trial court, every case found holds that litigation of liability by a potential defendant in a tort action is an improper use of declaratory judgment legislation. *See Cunningham Brothers, Inc. v. Bail*, 407 F.2d 1165 (7th Cir.), *cert. denied*, 395 U.S. 959, 89 S.Ct. 2100, 23 L.Ed.2d 745 (1969); *Frito-Lay, Inc. v. Dent*, 373 F.Supp 771 (N.D.Miss.1974); *States*

11. *Farmers v. Sessions* did have a redeeming feature not present in this case. There the insurer brought into the action as a party defendant the person most interested in the outcome of the declaratory action, i.e., the person injured. The insured party had little reason to be concerned in the outcome of the suit, having placed himself in the bankruptcy court.

*Steamship Company v. Featherstone,* 240 F.Supp 830 (D.Ore.1965); *Sun Oil Co. v. Transcontinental Gas Pipe Line Corp.,* 108 F.Supp 280 (E.D.Pa.1952), aff'd, 203 F.2d 957 (3rd Cir.1953).

Among the States, it appears that only Idaho has ruled on this application of declaratory judgments, and it, too, has held this use improper. *See Ennis v. Casey,* 72 Idaho 181, 238 P.2d 435 (1951). Only in *Ditzler v. Spee,* 288 Minn. 314, 180 N.W.2d 178 (1970), has a state court allowed the use of a declaratory judgment action to litigate tort liability. In *Ditzler,* however, the need to prevent multiple lawsuits and the peculiar positions of the parties appear to have been overriding considerations.

Thus, following the express intention of the Act to harmonize the laws of Texas with those other States and the federal laws, we hold that KMS improperly attempted to litigate its liability to Willingham by seeking a declaratory judgment. Therefore it could not have stated a cause of action under the Act and Willingham's motion to dismiss was properly denied.

*K.M.S., supra,* at 174.

The Texas Court of Appeals may have overlooked its Supreme Court's holding in the earlier case of *Central Surety & Insurance Corp. v. Anderson,* 445 S.W.2d 514 (Texas 1969). Here it was not the insurance company which brought the declaratory judgment action, but the insurer's insured who brought it under an Owners' Landlords' and Tenants Liability Policy which obligated the insurer both to defend and to pay any judgment rendered its insured—against whom a tort action was pending. The trial court entered judgment as sought. The Supreme Court reversed as to the adjudication of liability to pay any judgment, doing so on the basis of a case decided one year earlier [12] wherein it was both the insurer and the insured asking for a declaratory decree as to potential liability of the insured to a third party, and the insurer's potential liability to the insured.

In that case, an appeal was taken from a judgment that the insurer had the obligation to both defend and pay any judgment that might thereafter be rendered against its insured.

In reversing as to the liability of the insurer to pay any judgment, the Texas Court wrote:

The question posed is whether or not under the facts of this case, Larry Buttler is liable for the torts of his wife, Sarah Buttler. But, no court has yet decided whether Mrs. Buttler has committed a tort which would render her liable in damages to Mrs. Burch. That is the issue involved in the untried cause of Burch v. Buttler. At present, the question is hypothetical—"*If* Mrs. Buttler be held liable to Mrs. Burch for damages in tort, is Larry Buttler to be held liable also although he did not aid or abet in the conduct of his wife, which is alleged to be tortious." Should this question be answered, then the following "iffy" question arises. *If* Larry Buttler be held liable for his wife's tort, should the liability of the petitioner insurance company be limited to the amount of his interest in the community estate of the marriage subject to execution?

*Of course, if Mrs. Burch should fail to establish her case against Mrs. Buttler, the questions raised by petitioner's points would be purely academic and we would have had a considerable amount of judicial wheel spinning for nothing.*

We can well appreciate that the parties would prefer a definite answer by this court to the questions posed by petitioner's points rather than to take an "educated guess" based upon a study of our prior decided cases and authoritative materials as to what we would hold,—as, if and when the questions are presented in justiciable form. However, the giving of advice as to proposed or possible settlements is not a judicial function. As a practical matter if for no other reason, this must be left to the profession.

---

12. *Firemen's Insurance Co. of Newark, New Jersey v. Burch,* 442 S.W.2d 331 (1968).

In *Lide v. Mears*, 231 N.C. 111, 56 S.E.2d 404 (1949), cited with approval in the Puretex case, the North Carolina Supreme Court said:

"There is much misunderstanding as to the object and scope of this legislation (Uniform Declaratory Judgment Act). Despite some notions to the contrary, it does not undertake to convert judicial tribunals into counsellors and impose upon them the duty of giving advisory opinions to any parties who may come into court and ask for either academic enlightenment or practical guidance concerning their legal affairs. *Town of Tryon v. Duke Power Co.*, 222 N.C. 200, 22 S.E.2d 450 [1942]; *Allison v. Sharp*, 209 N.C. 477, 184 S.E. 27 [1936]; *Poore v. Poore*, 201 N.C. 791, 161 S.E. 532 [1931]; Anderson on Declaratory Judgments, section 13. This observation may be stated in the vernacular in this wise: The Uniform Declaratory Judgment Act does not license litigants to fish in judicial ponds for legal advice."

Our investigation of cases from other jurisdictions further convinces us that the rules as to advisory opinions heretofore enunciated by our courts represent the sounder view. In *Prashker v. United States Guarantee Company*, 1 N.Y.2d 584, 154 N.Y.S.2d 910, 136 N.E.2d 871 (1956), the Court of Appeals of New York considered a question similar to that now before us. It appears that a private plane being piloted by Nathan Prashker with Harold Weissman as a passenger crashed near Pittsburgh, Pennsylvania. Both Prashker and Weissman were killed. Weissman's administratrix sued Prashker's estate and the corporation that owned the plane. Notification was given to the insurance carrier. Liability was denied upon the ground that Prashker at the time of the plane crash was violating the regulations of the Civil Aeronautics Administration and hence the loss came within an exclusion of the policy. Prashker's estate and the corporate owner of the plane then sued the insurance company seeking a declaratory judgment determining that the accident was covered by the policy and that the insurance company was obligated to defend. The New York court held in a unanimous opinion written by Judge Van Voorhis that the insurance company was bound to defend the Weissman action but that the suit to declare whether or not the insurance company was liable on the policy was premature and must await the disposition of the Weissman action. The court said:

"The courts do not make mere hypothetical adjudications, where there is no presently justiciable controversy before the court, and *where the existence of a 'controversy' is dependent upon the happening of future events. Guardian Life Ins. Co. of America v. Graves*, 268 App.Div. 809, 48 N.Y.S.2d 618 [1944]; *Maryland Cas. Co. v. Tindall*, D.C., 30 F.Supp. 949 [1939], affirmed 8 Cir. [1941], 117 F.2d 905; *American Fidelity & Cas. Co. v. Service Oil Co.*, 4 Cir. [1947], 164 F.2d 478. In the last-cited case, at page 480, the court said that *'if any controversy should subsequently arise between the insured and the company as to the coverage of the policy, it can be litigated as well after the conclusion of the litigation in the state court as now.'*"

Similarly, in *State Automobile & Casualty Underwriters v. Gardiner*, 189 Kan. 544, 370 P.2d 91 (1962), the insurance company urged in a declaratory judgment proceeding that it was not liable upon an insurance policy for the tort (reckless driving of a truck) of Walter James Gardiner because Gardiner was not driving the vehicle which figured in a collision with the consent of the insured, Leon Mulder. A number of suits had been filed against Gardiner and Mulder. *The Kansas court pointed out that the insurance company was seeking to obtain a predetermination of at least one very cogent element in the pending tort actions. The court said,*

*"This is not the purpose for seeking relief by a declaratory judgment action and this court will not permit such procedure."*

See also and compare: *Tennessee Farmers Mutual Insurance Company v. Hammond,* 200 Tenn. 106, 290 S.W.2d 860 (1956); *State Farm Mutual Automobile Insurance Company v. Semple,* 407 Pa. 572, 180 A.2d 925 (1962); *Burns v. Hartford Acc. & Indemn. Co.,* 175 So.2d 84 (Fla.App.1963); *Liberty Mutual Insurance Co. v. Lee,* 117 F.2d 735 (5th Cir.1941); 20 Am.Jur. 436, Courts, § 75; 21 C.J.S. Courts § 36, p. 46.

*Firemen's Ins. Co. of Newark, New Jersey v. Burch,* 442 S.W.2d 331, 333–35 (Texas 1968) (emphasis added) (footnote omitted).

It appears to us that this Court over twenty years ago took the same position as the Texas court. In *Temperance Insurance Exchange v. Carver,* 83 Idaho 487, 365 P.2d 824 (1961), Temperance Insurance Co. issued a policy of automobile liability insurance to one Coburn. After Coburn collided with another car and two people were killed, the insurer commenced an action naming as defendants its insured and the heirs of the two decedents; the sole purpose of the action was to secure a declaratory judgment adjudicating that Coburn had fraudulently obtained the policy by fraudulent representations and non-disclosures. A significant holding in the court's opinion was that:

> *Where an insurer acts with reasonable promptness, so that the insured and third parties are not prejudiced,* the insurer is entitled to have the question of the validity of its policy, and its liability thereunder, determined prior to the trial of an action against the insured upon a liability alleged to be covered by the policy, *so that the insurer may know whether it is obligated to defend the insured as provided by the policy.*

83 Idaho at 492, 365 P.2d at 820 (emphasis added).

Another significant holding of that case was the Court's reliance on *Ennis v. Casey* for the proposition "that relief by way of declaratory judgment was not available in a case where negligence of the defendant was the determinative issue." 83 Idaho at 493, 365 P.2d at 927. Therein it was further observed that issues triable under the declaratory judgments act are generally for the court without a jury. *Id.* at 493, 365 P.2d at 827. Of course, as has been discussed, *supra,* the insurer may assume the defense of an action against its insured, and reserve for another day, following judgment in the underlying case, the question of whether it had the obligation to defend, and coincidentally, where judgment has been rendered against its insured, the obligation to indemnify.

We need not decide what action the Court would take were we reversing the judgment of the district court. Suffice it to say that were such the case, there would be a strong inclination to direct a dismissal for lack of jurisdiction under the Declaratory Judgment Act to try, as dispositive of the question of policy coverage, factual issues of negligence and proximate cause. Under consideration of good judicial administration, we highly question the propriety of trying such issues in advance of those same issues being tried in the underlying action, wherein the judgment will be dispositive and not moot. Hopefully, we have commented sufficiently on the propriety of an insurer taking its insured to court fourteen months after it had taken control of the insured's defense in an action brought by a third person. Beyond the problem of likely conflict of interest, the long delay of the underlying action is intolerable,[13] and on its face prejudicial to the insured and third parties.

The judgment of the district court is affirmed. Costs, including attorney's fees, awarded to respondent.

---

13. A statement of the trial court at the instructions conference suggests that had Agricultural Development raised the issue earlier, perhaps in answer or motion to dismiss, there would have been no trial.

DONALDSON, C.J., and HUNTLEY, J., concur.

SHEPARD, J., concurs in the result.

BAKES, Justice, dissenting:

This case should be reversed and remanded for a new trial because of the reversible error committed by the trial court in changing the special verdict form without affording notice to counsel or giving them an opportunity to object and point out why the alteration improperly modified the verdict form. As all trial counsel will recognize, after the trial court has prepared the jury instructions and verdict forms, and given counsel an opportunity to review them and make their objections, the attorneys then present their closing arguments to the jury based upon those jury instructions and verdict forms. Without knowing of the changes made, counsel are prevented from discussing the new material in their arguments.

In this case when the jury originally returned its verdict, it answered question number 1, "Was the irrigation system built by defendant defective due to said defendant's negligence or poor workmanship," in the negative. Had the trial court not added the "6" in front of the last question, and not orally told the jury when he was giving the jury instructions that the "6th" question was "the last question" which they needed to answer, the jury might well have ended its deliberations after answering question 1 in the negative, and judgment would have been entered for the appellant. By listing a sixth question on the jury form the trial court turned the special verdict into a hybrid special verdict-general verdict form, which obviously confused the jurors, since their answers to question 1 and question 6 were diametrically opposed.

These changes were made without the knowledge of counsel after the jury conference was over, contrary to I.R.C.P. 51(a)(1), and the error can hardly be said to be harmless. The appellant is entitled to a new trial.